## UNITED STATES DISTRICT COURT
## THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Zafar Sheikh | ) | 23cv3315 |
| | ) | Judge Maldonado |
| Plaintiff | ) | Magistrate Judge Gilbert |
| | ) | Randomly Assigned CAT 2 |
| vs. | ) | |
| | ) | |
| Brian Jung | ) | |
| Robert Kryder | ) | |
| Lance Malina | ) | **FILED** |
| Village of Schaumburg | ) | |
| | ) | MAY 25 2023   JB |
| Defendants | ) | |

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Zafar Sheikh acting pro se files this complaint against the defendants identified above and alleges, claims and states as follows:

1- As an immigrant of Middle East origin with an alien non-main stream religion, Plaintiff always knew at the back of his mind that he will have to confront discrimination and pre-ordained prejudices. Despite a sustained effort in legislative, judicial and administrative spheres by the federal and state governments to discourage such misconduct, there remains a silent minority which is unwilling to accept such change and tries in unique ways to thwart progression towards equal rights. An oft used tactic in their arsenal is to act under the color of law and discourage immigrants from planting their roots.

## JURISDICTION

1- This Court has jurisdiction under 28 U.S.C §1343 and 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and under 42 U.S.C.

1

§1983. Court also has supplemental jurisdiction pursuant to U.S.C. § 1367 (a) to hear and adjudicate state law claims.

1- Venue is proper as the conduct complained of arose within the boundaries of the Northern District of Illinois.

## PARTIES

2- Sheikh is the owner of property which is situated in Schaumburg, Illinois.

3- Village of Schaumburg is a municipality in Illinois which is located roughly thirty miles northwest of the City of Chicago.

4- Brian Jung is an employee of the City of Schaumburg, holds extremist views and is responsible for reviewing building permit applications.

5- Robert Kryder is an employee of the village of Schaumburg, holds extremist views and is presumed to be supervisor of Brian Jung.

6- Lance Malina is a resident of the Cook County, holds regressive views on race relations and is presumed to advise the village and its employees on administrative matters.

## FACTUAL  BACKGROUND

7- Plaintiff Sheikh and his family purchased the Schaumburg property in 2014.  The property upon its purchase was almost all vacant and the intent of the Plaintiff was to make necessary renovations and make it attractive for new would be tenants to lease the premises.

8- One of the spaces which was vacant at the property, the Plaintiff thought that if he could install a restaurant exhaust hood in that space, it would make it attractive for an individual to open a coffee shop or a restaurant in that space.

2

9-  Plaintiff visited the City hall and met officials from the community development department and apprised them of his plans. Plaintiff also told them that since the place is vacant, a restaurant exhaust hood could attract somebody interested in starting a restaurant. Plaintiff notified the department that the prospect who would like to open the restaurant could draw his/her own plans for seating, refrigeration and décor, and could get a buildout permit for the space upon leasing the space as per his needs. The community department agreed with this assessment and asked Plaintiff to submit exhaust hood plans for review.

10- Upon reaching an agreement with Village officials for just a hood permit, Plaintiff hired an architect who drew the exhaust hood plans and submitted to the village building department for approvals in August 2021.

11- Upon review, the Village asked for some changes in the hood installation plans and also asked for the equipment that was to be used for cooking purposes. Plaintiff changed the plans as per the instructions of the building department and also gave a list of equipment to be located at the vacant space, which included an oven and two fryers.

12- Everything the village wanted for the restaurant hood permit was drawn by the Plaintiff's architect and it was hoped that the Village would issue the hood permit shortly. But the village still would not issue the permit. After waiting for about four months, Plaintiff visited the village hall and contacted the building department, who referred him to Brian Jung, an examiner in the building and permitting department. Jung told the Plaintiff that everything was ready to go and permit could be issued shortly.

13- After waiting for another few weeks, when no hood permit was issued, Plaintiff
again visited the village hall and met one building official namely Brian Jung.
Jung notified the Plaintiff that the officials at the village had decided that 'you
will not be issued a permit and you must submit plans for the whole space'.

14- Plaintiff reminded Jung that it had been agreed with the village officials that
Exhaust hood permit was a stand alone permit and it did not require plans for the
whole space, as the prospective lessee could design the space as per his needs.
Since no lessee as yet was on hand or interested in space, it would be hard to
design the space, only to be redesigned and rebuilt again, as the requirements or
needs of the new occupant could be far different than what was being
contemplated. Jung told the Plaintiff that he will notify his supervisor of the
applicant's concerns and get back to us.

15- Jung also mentioned that one of the pictures that was submitted to the village of
the dining area, where the Hood was to be placed, showed some drywall had been
repaired. Jung wanted to know if the drywall had been partially changed or
removed and asked for explanation. It was in the early part of 2022. Plaintiff told
Jung that Plaintiff had a leaked water valve in the bathroom, which tore some
drywall and Plaintiff investigated by removing a portion of the drywall, and
cleaning the sub-surface. After the clean up, the drywall was reinstalled. Jung told
him that the Plaintiff did the right thing of remediating the problem immediately.
Jung also stated that for such a minor repair, plaintiff did not need to get a permit.

4

16-    Jung once again promised that Plaintiff will be issued a permit in few days. By now it already had been over six months since application for hood permit was submitted.

17-    After waiting for another few weeks, Plaintiff contacted Jung and inquired about the Hood permit. Jung told Sheikh that he had discussed Plaintiff's concerns with his supervisor and had notified him that this Plaintiff merely wanted to limit the permits to the Hood only, but supervisor had changed his mind and wanted a comprehensive design showing the coffee shop layout and other details. Supervisor assured Jung that once new changed plans are submitted, Plaintiff could get the permit in short order. Plaintiff Sheikh objected to this new condition, which was nothing but an attempt to finding a frivolous excuse to delay the issuance of permit, which by then had already been pending for the last 7 months. But Jung was unmoved and said it was 'your choice, take it or leave it'.

18-    Having reached a dead end and in an effort to placate the situation, Sheikh had no choice but to spend more money and engage the architect and have him redraw architectural plans for a coffee , bakery shop. Though all this new expense would have been a wastage of money and resources, once a lessee leased the space and redraw the plans for another permit to satisfy his own requirements. Having no choice, Sheikh's architect redrew the plans which were submitted to the Village for approval.

19-    The Village upon receiving the new plans again pointed out few things which they stated were against the village codes. After making changes and numerous

5

back and forth corrections, the City was provided with architectural drawings which met each correction as per the building codes and asked by the City.

20-    Sheikh expected that a permit would finally be issued at this stage. Sheikh sent an email to Brian Jung at the building department and enquired as to when the permit would be issued. Sheikh did not receive any response but a few days later received a call from one building official who identified himself as Robert Kryder and stated to the effect that he was hired by the Village in December 2022 and was the new sheriff in town. Kryder told Plaintiff that whatever happened in the past happened and he had nothing to do with it. Kryder stated that he was going to re-check the drawings allover and will be solely responsible for approving the permit. Kryder alleged that according to his information, about five years ago in 2018, a certain portion of a drywall may have been damaged, and started re-asking and reinvestigating the same questions, which had already been discussed with Brian Jung over a year ago in early 2022, and dealt with as to who opened the drywall and who re-installed it. Sheikh asked Kryder as to what was his source of information about the drywall, to which kryder replied that he saw a picture which was given to him by Jung, and the picture indicated that the drywall had been changed or replaced and that he checked the records and saw no permit issued by the Village to change or replace the drywall. Kryder also stated that the picture, the source of which he was unaware as to how Jung got hold of such a picture, also showed some water marks or paint signs on the drywall. Kryder further stated that those water marks may or may not be mold, but he was not sure. Plaintiff asked him as to how can he make a determination by looking at a

6

picture if it was mold or merely it was paint or water markings. Kryder had no answer. Kryder further stated that he was not comfortable issuing any permit to the Plaintiff and even went as far as to proclaim that "he will never issue a permit to this Plaintiff". Kryder was reminded that this permitting process had been started over 17 months ago, and the design and layout of the space was as per the code requirements of the Village, and it did not make any sense to deny a permit for plans which had been designed, changed or modified repeatedly by the Plaintiff's architect and met every village building code. Kryder retorted that "you cannot challenge me, as I am the one who decides who gets a permit or who does not get a permit, and it is his decision that he will not grant any permit to any occupant or tenant in this building".

21- Kryder was made aware that the building application of the Plaintiff was in full compliance of the City codes, and Kryder could not continue to deny him the permit. After not been able to point out any deficiency in the permit plans, Kryder made a unique and extra-ordinary statement. Kryder stated that before I issue you a permit, I would like to visit the premises to make sure that "there are no germs or fungus in that building". Kryder further implied that he considers it necessary to make pre-inspection of Sheikh's building as some foreigners are bringing in germs and fungus into the local communities, which had earlier caused major devastation. There was no doubt in Plaintiff's mind that Kryder was referring to the assertions of a fringe but vocal element, who continue to blame and hold foreigners primarily responsible for bringing and spreading COVID-19 in the U.S.

7

## SHEIKH'S SIDING PERMIT APPLICATION HAS ALSO BEEN
## HELD UP AT THE BUILDING DEPARTMENT FOR A YEAR AND HALF

22-    Likewise Sheikh had plans to uplift the façade of the building and submitted

building plans to the Village for façade improvements. Numerous façade plans

were submitted to the Village over the last few years, but all plans were rejected

by the Village. Each time upon refusal, the Village gave some bogus and

frivolous excuses. The earlier plans which were submitted contained drawings

which showed the dryvit material was to be used for the exterior. The plans were

changed many times to meet the criteria of the village. After a long pause, which

again lasted for months, the village notified Sheikh that the Village will not

approve his permit as the village does not allow dryvit material for exterior

applications. This assertion by the village that the village's building code does not

allow dryvit material to be used for the building exteriors is untrue, as there are

hundreds of commercial and residential buildings in the Village which use dryvit

exteriors.

23-    Nevertheless Sheikh did not make an issue out of it, and had his architect re-draw

the plans. The new façade plans incorporated siding which was made of

composite materials. This permit was also applied over a year ago, but the City

has refused to issue that permit as of the date of the filing of this complaint.

Having waited for months, finally Sheikh sent an email to the building department

in December 2022, and was notified by Jung that the plans have been sent by the

building department to the community department. (Exhibit L: email). Even that

was over six months ago, and Plaintiff fears that the Village has apparently

8

decided to retaliate because of filing law suit and has decided not to issue the façade permit as well.

## ONE OF SHEIKH'S HISPANIC TENANT IS CHASED OUT

24- One of the spaces in Sheikh's strip center was leased by an Ecuadorean immigrant named Able Chanico. Chanico ran and operated a car repair shop. The village inspector checked and harassed Chanico unnecessarily over a period of six months. Chanico was repeatedly cited for different frivolous things including his style of running his business. Chanico did not speak English but inspector never tried to translate his instruction and assumed that Chanico would comply with his orders, which Chanico could not even understand. The Village inspector would find frivolous items in his business and issue him citations thru the owners. One of the so called citation that was issued stated that Chanico had too many cars parked at his business. Another citation said that some of the cars which were coming in for repair after breaking down or getting involved in accidents did not bear both license plate. The license plates are often get damaged or fall down during towing of cars, but inspector never listened to this argument and issued citations. According to this inspector, the Village had a regulation that if any car parked in the Village which did not have both license plates, will be considered a violation of the code. It was pointed out to the inspector that in the Village of Schaumburg, there are dozens of car lots, with new and used cars, which while parked at the lots for sale, did not have either front or back license plates. For this the inspector had no answer, but responded that those are big shops and this rule does not apply to them. Regardless, Chanico was harassed so much, that he

9

decided to leave and abandoned the repair shop causing this Plaintiff serious financial harm for loosing a well paying tenant.

## CITY REFUSED TO GRANT OR EVEN CONSIDER

## VAN – TRUCK RENTAL ACCESSORY LICENSE FOR SHEIKH'S  TENANT

25-     The repair mechanic shop which was vacated by Chanico, was finally leased to Mr. Viname another immigrant from Venezuela. Mr. Viname requested that since he does not speak English, Sheikh should approach the village and try to get him an accessory business license to operate truck-van rentals. Since many customers who leave the cars for repair do sometimes need truck or van rentals for transport purpose.

26-     Sheikh visited the village hall and met one Parth Joshi. Joshi was asked as to the requirements of getting an accessory permit to rent vans-trucks by the Mechanic shop.

27-     Joshi told the Plaintiff that though the building has the proper zoning for the van-truck rental business, he still needs to check with his supervisor if he would allow a truck-van rental business at the property. Few days later Joshi called and notified Plaintiff that his supervisor is not going to allow the accessory business license for truck-van rentals at the property. Joshi said that the supervisors don't feel that such a business would be suitable for the village, and the village is against granting such business licenses.

28-     Joshi was reminded that all Home Depot stores in the village had accessory business licenses for renting vans and trucks. To that Joshi responded that those

are big retail stores and the village encourages them to come to Schaumburg, but for small business the city has nothing to gain by granting such licenses.

## PLAINTIFF TRIED TO EXERCISE HIS RIGHTS TO RESOLVE ISSUES ON ADMINISTRATIVE LEVEL BUT WAS SPURNED

29-    City officials' discriminatory conduct has delayed the renovation of the building beyond any reasonable time frame. What it implies is that the City is unwilling to issue any permits to do any renovation. It also means that about sixty thousand dollars in property taxes to the Cook County have to be paid by Sheikh once more from digging into the savings or to borrow and pay the taxes on a vacant property that could not be leased because of disrepairs, and on which the City is adamant not to issue any permit to renovate.

30-    The end result of all that has been an outcome that City desired: to make Sheikh bleed financially and force him to sell his building or subject him into foreclosure and leave Schaumburg.

31-    The City's website states that in case anyone feels any discrimination or has any gripes against any matter, or against any employee of the City, they should file a complaint with the City online and the city will seriously look into and investigate the matter. The City touts that it has set up an office of professional standards within its administration to discourage discrimination based upon race, color, national origin, sex or age. (Exhibit M). In an effort to resolve the issues, Sheikh filled out the complaint form and emailed it to the City.

32-    Mr. Townsend, who is the City manager, wrote back to Sheikh stating that City will not investigate the Sheikh's complaint. The reason Townsend cited for denying Sheikh an opportunity to be heard on administrative level and retaliating

11

against him and not investigating the complaint was that Sheikh had threatened to go to Court if the City continues to deny him permits on discriminatory grounds. In other words the message Townsend sent was that the City will retaliate against anyone trying to take the matter to Court and will deny him his right to be heard on administrative level. (Exhibit N: Townsend Response).

## LANCE MALINA WAS BEHIND PERMIT DENIALS AND ADVISED THE VILLAGE TO RETALIATE

33- Lance Malina who advises the Village of Schaumburg on administrative matters is presumed to be the individual who has advised both Jung and Kryder to delay and deny issuing permits to Sheikh on frivolous grounds under the color of law.

34- Malina is also the individual who advised Joshi to deny giving any approvals for the siding and truck rental permits to Sheikh or to Sheikh's tenant who had been trying to get a license to operate U-Haul rentals at his mechanic shop as an accessory business.

35- Malina has also been advising Townsend to retaliate against Sheikh and pushed him not to undertake any administrative review of the complaint filed by Sheikh to look into the misconduct of Jung and Kryder, when Sheikh notified the City that if discrimination against him continues, he may take the matter to the federal court and file complaint for discrimination and violations of his civil rights. Townsend emailed Sheikh that he was acting on Malina's advise (Exhibit O).

36- Townsend was the ultimate and final authority within the City of Schaumburg whom Sheikh could have asked for relief by filing administrative complaint.

## COUNT I: 42 U.S.C. § 1983 – EQUAL PROTECTION

37- Sheikh restates and re-alleges the General Allegations of the Complaint as if

12

fully stated herein.

38- Village of Schaumburg applies and enforces the City Laws in conflicting and inequitable ways when reviewing and processing building permit applications, especially when applied to those of the Middle Eastern heritage and religion.

39- The City codes and regulations are being selectively applied to Sheikh which violates the Equal Protection Clause of the 14th Amendment of the United States Constitution (the "Equal Protection Clause").

40- The rights and privileges denied by the Village of Schaumburg to this Plaintiff which are secured by the Equal Protection Clause have and continue to cause substantial damages to Sheikh, financial and emotional.

## COUNT 2

## DENIAL OF DUE PROCESS RIGHTS UNDER 14TH AMENDMENT

41- Sheikh restates and re-alleges the general allegations of the complaint as if fully described herein.

42- Sheikh spent hundreds of thousands of dollars to purchase the property with the intent to lease it and make some profit, which the City's actions have rendered it useless and deprived of its utility.

43- 14th Amendment of the U.S. constitution declares that No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

44- Whereas the actions of Jung, Kryder, Malina and the City of Schaumburg have

13

frustrated Sheikh's plans by denying him the opportunity to use his property for gainful purposes. Denial of building permit in reality deprives Sheikh the utility of his property, which translates into deprivation of property without due process.

45- Townsend's refusal to investigate Sheikh's complaint resulted in direct injury to Sheikh's constitutional rights as Townsend was the ultimate authority within the City of Schaumburg who could have investigated and resolve Sheikh's grievances, short of proceeding to court.

## COUNT 3

## CITY OF SCHAUMBURG IS VACAREOUSLY RESPONSIBLE
## FOR THE ACTIONS OF ITS AGENTS UNDER SECTION 1981

46- At all times relevant Lance Malina, Robert Kryder and Brian Jung were working for the City of Schaumburg when they denied issuing building permits to the Plaintiff without any legitimate grounds, and on religious and racial prejudices.

47- At all times relevant City had a responsibility to properly train Malina, Kryder and Jung and teach these individuals to follow the Civil Rights laws oo the U.S. and discourage them from trampling on the rights of the Plaintiff by refusing to let him use his property and rejecting his application for renovation of the building.

48- City Manager Townsend was notified that Malina, Jung and Kryder were violating Plaintiff's rights but instead of entertaining his complaint, Townsend refused to look into the grievances brought to his attention by Sheikh.

49- As such the City of Schaumburg is vicariously responsible for the acts and omissions of Malina, Kryder and Jung under Section 1981.

14

## COUNT 4

## VIOLATIONS OF SECTIN 1981 & 1982 BY MAKING EXTRA ORDINARY DEMANDS UPON SHEIKH WHICH IS MADE TO NO OTHER

50- In one of the conversations, when Sheikh called Kryder to check on his permit request, Kryder made a uniquely prejudicial demand on Sheikh. Kryder stated, *"before I issue you any permit, I want to come to the premises, and see if you have brought any germs and fungus to those premises, and once I am satisfied that the place does not contain any germs or fungus, only then I may consider your permit application request. As you know there are many diseases being brought to our country and neighborhoods".* Kryder was alluding to an oft repeated mantra of ultra nationalists that COVID-19 was introduced into the U.S. by foreigners.

51- Kryder's statement was extremely demeaning and humiliating to the Plaintiff as it implied that immigrants were responsible for spreading diseases into the U.S.

52- Plaintiff believes that such demeaning demands are not made to any other applicant who may have applied for building permits in the City of Schaumburg.

53- Section 1981 and Section 1982 state that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

54- Kryder's unique demand, which singled out the Plaintiff, and made to none other, violate Section 1981 and 1982, which serves as complete bar to such conduct.

15

## COUNT  5

### CITY VIOLATED SECTION 1981, 1982, 1983 AND CIVIL

### RIGHTS ACT OF 1964 BY RETALIATING AGAINST PLAINTIFF

55-    City of Schaumburg and Malina violated Section 1981, 1982, 1983 and the Civil

Rights Act of 1964 when they decided to retaliate against Sheikh for going to

Court to redress his grievances.

56-    City's website touts that it discourages discriminatory conduct, and alerts its

readers, that if one feels that he is being discriminated against by any City

employee, they should file a complaint. City's assures that its inspector general

will investigate those complaints and will try to grant immediate relief.

57-    But when Sheikh filed his Complaint with City, the City Manager in no uncertain

terms refused to look into the Sheikh's grievances. The reason Manager

Townsend cited was that since Sheikh was going to Court, the City will not

investigate his complaint. Townsend told Sheikh that this retaliatory measure was

being taken at the advice of their administrative advisor Malina.

58-    Retaliation as an intentional and deliberate act in response to a protected action

and is, by definition, an intentional act. It is a form of discrimination because the

complainant is being subjected to differential treatment. The complained of matter

need not be a complaint; it can be any lawful conduct that an individual engages

in connection with a protected right. The very concept of retaliation is that the

retaliating party takes action against the party retaliated against after, and because

of, some action of the latter.

59-    City of Schaumburg acted deliberately to send a clear message that going

16

to court or threatening to go to court is unwelcome and risky. The City
retaliated against Sheikh to instill fear in others who might consider
making a complaint or opt to go to Court in the future. Malina had Sheikh
labeled as a "troublemaker" and advised the City to ignore Sheikh's
grievances. Malina's rationale which City bought into as well, was what
this immigrant is fighting the City hall. So let him do what he wants and
let him forget ever getting any permits.

## STATE LAW CLAIMS

### MANDAMUS

60-      Sheikh restates and re-alleges General Allegations of the Complaint as if fully
stated   herein.

61-      Sheikh submitted the hood and renovation permit application almost two years
ago, which was fully compliant with the building code of the City of
Schaumburg, but the village has consistently tried to delay and deny the
application, without giving any reason.

62-      Sheikh has a right to the review of his building and hood application and get
approvals within a reasonable time consistent with the rules and customary
workings of the building department of the City of Schaumburg.

63-      The City of Schaumburg has a duty to enforce the municipal codes, including
the building codes in a reasonable, timely and equitable manner.

64-      City has a duty to make a formal determination on Sheikh's application for a
building permit which is consistent with the building codes in an expeditious
manner and without causing financial harm to this applicant, whose losses

17

because of this unwanted and unexplained delay have reached $250,000.00

65-   Sheikh has no adequate remedy until the City formally takes action on the Sheikh's application and grants him hood and renovation permits.

66-   The City has refused to provide any reasonable grounds to withhold issuing a building permit to Sheikh, which is pending with the Village since August 2021. Due to the unlawful and deliberate delays, this Plaintiff has been caused irreparable harm resulting in serious financial and emotional stress.

## PETITION FOR RELIEF AGAINST THE CITY CITATIONS

Plaintiff Sheikh in response to the citations imposed by the City states as under and recites the following facts:

67-   In 2021 the city of Schaumburg issued a citation to the Plaintiff which pointed out certain issues with the maintenance of the property located at 975-83 West Wise Road in Schaumburg. The citation number is: 2021-CD-0218. (Exhibit A, B).

68-   The citation pointed out miscellaneous issues which included the missing numbers at some of the doors at the building, repairing few areas of the parking lot and black topping the lot, removal of a slightly cracked light pole, removal of few cars at the mechanic shop which was leased to a third party and which City claimed had expired license plates. The mechanic shop had been leased to a third party, not associated with this complainant. City also claimed that some of the blank signs at the sign post were not clean and needed resurfacing and

18

in addition a handicap sign needed to be repaired or replaced.

69- The Plaintiff made an appointment with the City inspector and both the Plaintiff and the inspector went thru the items which needed to be addressed and taken care off. Plaintiff also asked the inspector to point out areas of the parking lot which need to be resurfaced. Plaintiff marked those areas for repairs.

70- Plaintiff thereafter applied for a repair permit for the parking lot. The City sent Plaintiff a worksheet which asked him to mark the areas of the parking lot which had been scheduled to be repaired. Plaintiff marked those areas. City pointed out that it will check with the inspector to make sure that it included all areas that needed work. (Exhibit C, C-1, D). City also asked the Plaintiff to repair and replace two manholes, which were slightly over the grade.

71- After few days the City in response to the Plaintiff's enquiry about the issuance of parking lot repair permit, notified him that the Inspector had approved the locations to be repaired and the City will shortly issue the permit.

72- Few days thereafter the repair permit was issued. (C-2). The City also approved the areas that needed repair work.

73- -Plaintiff thereafter contacted few parking lot contractors who inspected the site and were also shown the city designated areas to be repaired. After getting few quotations, the Plaintiff selected one contractor. The contractor came with his crew on an appointed day, and re-asphalted the areas which needed repairs and also blacktopped the whole lot. Contractor also replaced the two manholes that the City wanted to be repaired or replaced. The City inspector came a day later, inspected the work and found it to be satisfactory. The Plaintiff paid over eleven

19

thousand dollars for the parking lot repairs. (Exhibit i).

74-     Plaintiff also took care of the waste area enclosure which needed some work and the City inspector found it also to be satisfactory.

75-     Plaintiff also replaced the outdoor sign panels, which were blank as there were no tenants in the building and the panels were intentionally left blank.(Exhibit E). But the city inspector asked the Plaintiff to change those panels, as they were dirty. Plaintiff was under not any obligation to change those, but the City inspector was argumentative and unreasonable. Considering the situation, Plaintiff agreed to change those panels as well.

Additionally Plaintiff took the measurements of the panels and contacted a company based in Chicago for supplying the blank panels. An order for the blank sheet was placed with the Company, and the company few days later prepared and installed the panels. In all to change panels and labor to reinstall them cost the Plaintiff over $1,600.00

77-     The numbers on the back doors which are at the rear of the building,(not front doors) were visible, but after years of wear looked somewhat faded. Plaintiff hired a painter who repainted the numbers over the existing numbers. Few days later when the Inspector came to look at them, he was not happy and said that he will not allow the numbers to be painted over and asked that they should be replaced with new numbers. Plaintiff asked as to why they should be replaced and the inspector replied that they don't look good. Plaintiff told him that these numbers were at the back of the building and no one ever sees them and are only for the convenience of the landscapers or cleaning crew, but inspector insisted

that they must be changed with new numbers. Plaintiff thereafter knowing the inspectors argumentative nature ordered brand new numbers and few days later had new numbers installed. (Exhibit E-1 to E-5).

78-      Likewise the inspector asked that one of the pole lights which had been slightly damaged, should be removed. Plaintiff had the pole light removed. Plaintiff also told the inspector that the corner light where it is situated is not necessary to be lit up, as that corner is not being used by the occupants of the center. Inspector said if that is the case, it need not be changed. Few days later the inspector called and notified the Plaintiff that he has spoken to his supervisor at the office, and the supervisor said that regardless of whether the light is required in that part of the parking lot or not, the Plaintiff should change it. Plaintiff protested that why should he spend another few thousand dollars for something which is not even required. The inspector said that he agrees with Plaintiff's position, but "my supervisor wants it, so I can't help it".

79-      Plaintiff contacted some vendors and took some quotations. One quotation which was for $1,300.00 was selected. The vendor was paid $650.00 in advance. (Exhibit H). The light was supposed to be installed within four weeks of the order. The vendor notified the Plaintiff after four weeks that the Company which imports the lights from China had supply problems as the factory which made the lights was locked down in China as whole city and industrial area was quarantined because of the COVID lockdowns and shipments of light poles from that factory in China had been disrupted.

80-      Plaintiff tried to explain to the vendor the necessity of having the light installed

21

as the City wanted it done immediately. But the vendor responded by explaining the supply chain issues and disruption of supplies because of COVID and also invoked 'force majure' and stated that this was something that was not in his control or in his hands.

When the inspector visited the building, the Plaintiff explained to him as to what had transpired. The inspector said that he understood the situation, as some of other business and property owners had also complained to him about shortages in some items because of supply chain issues  and would wait till the vendor could get supplies and installs the pole light.

## ALL VIOLATIONS WERE REMOVED & ADMIN JUDGE ACKNOWLEDGED THEIR REMEDIATION AT THE MAY 4  HEARINGS

81-     All violations that were issued on citation Number 21-CD-0218 were taken care Off. During the hearings on this citation in May the Administrative judge was satisfied and stated that he will dismiss all charges. (See Exhibit K: Transcript page 14,15,16,17).

82-     But at the next hearing, the inspector started pointing out some of the things which he said he had lately observed in one of his visits few days ago. These new items were not part of the earlier citation, which had been taken care of completely, but were items that the inspector claimed he had observed on his recent trip.

83-     Though no citation was issued for the new violations but nevertheless the Admin judge imposed the fines. Judge was told that at the last hearings, the

City's corporate counsel had found everything satisfactory and the judge had specifically agreed as per the evidence, that the Plaintiff was in complete compliance, but nevertheless the judge decided to impose the fines. There was no evidence presented in court by the inspector to back up his allegations, which concerned the new citations. Further the Inspector was not sworn or put under oath before testifying.

## NONE OF THE LEGAL PROCEDURES WERE FOLLOWED BY THE ADMIN JUDGE AT AUGUST 3 HEARINGS

84-    At the hearings the administrative judge did not follow any formal procedures or formalities. Even by administrative hearings standard which are sometimes more casual, the minimum laws of the Illinois statutes were not observed and were completely ignored. Judge did not ask any City witnesses to take an oath and tell the truth. No body was asked to appear at the podium and testify under oath. The procedures laid down in 5 ILCS 100, the "Illinois administrative procedures act" were ignored and not followed at all.

85-    The Illinois Statutory provisions as well as Illinois Supreme Court acknowledge that the Admin hearings need not be up to standards of the judicial court hearings, but still have to follow proper processes and procedures, specially when presenting evidence in a contested hearing.

## PRAYER FOR RELEIF

In view of the above, Plaintiff Sheikh prays that:

A:    The Court enter a declaratory judgment that the City of Schaumburg has acted to deprive the Plaintiff of his Constitutional rights of equal protection under the

23

Laws;

B:     Award the Plaintiff his actual damages, costs and reasonable attorney's fees for consulting, preparing and prosecuting this Complaint consistent with Section 1981, 1982 and 1983 laws of the United States;

C:     Hold hearings after the case is adjudicated for putting an appropriate financial penalty on the City of Schaumburg which is consistent with the City's violations of Plaintiff's civil rights,

D:     Issue a writ of mandamus requiring the City to take immediate action and approve the building permits that were applied almost two years ago,

E:     Issue an order granting this Plaintiff $250,000.00 for compensatory damages, and unnecessary delays that the City has caused and impose for acting arbitrarily to deny the civil rights of the Plaintiff.

F:     Dismiss the fines imposed by the City of Schaumburg.

H:     Any other relief that this Court considers just and appropriate under the laws.

/ S / Zafar Sheikh
Zafar Sheikh
3155 West Wallen Avenue
Chicago. IL. 60645.
Zafarsheikh313@aol.com
Tele: (847) 144-9670

# EXHIBIT A

A



# In the Village of Schaumburg, Illinois
## Administrative Adjudication

In the Matter of:

| | | |
|---|---|---|
| | ) Citation Number: | **2021-CD-0218** |
| **Village of Schaumburg** | ) Re: | **975-983 W WISE RD** |
| **An Illinois Municipal Corporation** | ) Issuing Department: | **Code Enforcement CDD** |
| v | ) | |
| Chicago Title and Land Trust CO. # 800 234 7068 Dated 8/1/06, Respondent | ) | |
| CO AGENT : C T CORPORATION SYSTEM | ) | |
| 208 SO LASALLE ST 814 | ) | |
| CHICAGO IL 60604, **et al.** | ) | |

## Findings, Decisions and Order

This matter coming for Hearing, notice having been given and the Administrative Body being fully advised in the premises, having considered any motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this Administrative Body finds by a preponderance of the evidence and rules as follows:

| Count # | Disposition | Reason | Penalties |
|---|---|---|---|
| 1 | **Continued** | **Agreement of Parties** | **$0.00** |
| | *Violation Code* | *Violation Notes* | |
| | IPMC 302.3 | FAILURE TO MAINTAIN PARKING LOT IN GOOD REPAIR. | |
| 2 | **Continued** | **Agreement of Parties** | **$0.00** |
| | *Violation Code* | *Violation Notes* | |
| | 154.124 D | FAILURE TO MAINTAIN HANDICAP SIGN IN GOOD REPAIR | |
| 5 | **Continued** | **Agreement of Parties** | **$0.00** |
| | *Violation Code* | *Violation Notes* | |
| | 155.156 | FAILURE TO REMOVE UNUSED SIGN POSTS ADJACENT TO GROUND SIGN AND REPLACE ALL MISSING AND PRINTED SIGN PANELS WITH PLAIN WHAITE PANELS. | |
| 6 | **Continued** | **Agreement of Parties** | **$0.00** |
| | *Violation Code* | *Violation Notes* | |
| | IPMC 304.3 | FAILURE TO MAINTAIN ADDRESS NUMBERS ON ALL MAN DOORS. | |

This order may be appealed to the Circuit Court of Cook County within 35 days of above date.

Village of Schaumburg 101 Schaumburg Ct, Schaumburg IL 60193
If you have any questions, please call the Community Development Department at (847) 923-3700.

**Citation Number: 2021-CD-0218**

**7**  **Continued**

**Violation Code**

151.10.2 G

**Agreement of Parties**  **$0.00**

**Violation Notes**

FAILURE TO REPAIR/REPLACE MISSING PARKING LOT
LIGHT POLE

**8**  **Continued**

**Violation Code**

IPMC 302.8

**Agreement of Parties**  **$0.00**

**Violation Notes**

FAILURE TO REMOVE SEVERAL
INOPERABLE/UNLICENSED VEHICLES FROM THE
PROPERTY

**Fines:**  **PENDING**

**Court Cost:**  **PENDING**

**Judgment Total:**  **PENDING**

Respondent is further ordered to correct immediately any and all outstanding above found violation(s).

**Continued to Wednesday, July 6, 2022, 01:00 PM**

_[signature]_

**Administrative Law Judge**

May 4, 2022

**Date**

The document has been copied to the following additional Respondents and/or Agents:

WISE ROAD BUSINESS CENTER
CO: SHEIKH, ANEEQA
3155 WEST WALLEN AVE
CHICAGO IL 60645

This order may be appealed to the Circuit Court of Cook County within 35 days of above date.

Village of Schaumburg 101 Schaumburg Ct, Schaumburg IL 60193
If you have any questions, please call the Community Development Department at (847) 923-3700.

# EXHIBIT B



# In the Village of Schaumburg, Illinois

## Administrative Adjudication

ß

**In the Matter of:**

| | | | |
|---|---|---|---|
| | ) | **Citation Number:** | **2021-CD-0218** |
| **Village of Schaumburg** | ) | **Re:** | **975-983 W WISE RD** |
| **An Illinois Municipal Corporation** | ) | **Issuing Department:** | **Code Enforcement CDD** |
| v | ) | | |
| Chicago Title and Land Trust CO. # 800 234 7068 | ) | | |
| Dated 8/1/06, Respondent | | | |
| CO AGENT : C T CORPORATION SYSTEM | ) | | |
| 208 SO LASALLE ST 814 | ) | | |
| CHICAGO IL 60604, **et al.** | ) | | |

## Findings, Decisions and Order

This matter coming for Hearing, notice having been given and the Administrative Body being fully advised in the premises, having considered any motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this Administrative Body finds by a preponderance of the evidence and rules as follows:

| Count # | Disposition | Reason | Penalties |
|---|---|---|---|
| 1 | **Non-Compliance** | **Other** | **$750.00** |
| | *Violation Code* | *Violation Notes* | |
| | IPMC 302.3 | FAILURE TO MAINTAIN PARKING LOT IN GOOD REPAIR. | |

**Disposition Finding Notes:** No previous default entered; previous orders indicating motion to set-aside default entered erroneously. Order of 12/2/21 is controlling. Finding applicable to all counts.

| Count # | Disposition | Reason | Penalties |
|---|---|---|---|
| 2 | **Non-Compliance** | **Other** | **$500.00** |
| | *Violation Code* | *Violation Notes* | |
| | 154.124 D | FAILURE TO MAINTAIN HANDICAP SIGN IN GOOD REPAIR | |
| 5 | **Non-Compliance** | **Other** | **$750.00** |
| | *Violation Code* | *Violation Notes* | |
| | 155.156 | FAILURE TO REMOVE UNUSED SIGN POSTS ADJACENT TO GROUND SIGN AND REPLACE ALL MISSING AND PRINTED SIGN PANELS WITH PLAIN WHAITE PANELS. | |
| 6 | **Subsequent Compliance** | **Other** | **$250.00** |
| | *Violation Code* | *Violation Notes* | |
| | IPMC 304.3 | FAILURE TO MAINTAIN ADDRESS NUMBERS ON ALL MAN DOORS. | |

This order may be appealed to the Circuit Court of Cook County within 35 days of above date.

Village of Schaumburg 101 Schaumburg Ct, Schaumburg IL 60193
If you have any questions, please call the Community Development Department at (847) 923-3700.

**Citation Number: 2021-CD-0218**

| 7 | **Non-Compliance** | **Other** | $750.00 |
|---|---|---|---|

**Violation Code**

151.10.2 G

**Violation Notes**

FAILURE TO REPAIR/REPLACE MISSING PARKING LOT LIGHT POLE

| 8 | **Non-Compliance** | **Other** | $750.00 |
|---|---|---|---|

**Violation Code**

IPMC 302.8

**Violation Notes**

FAILURE TO REMOVE SEVERAL INOPERABLE/UNLICENSED VEHICLES FROM THE PROPERTY

| | Fines: | $3,750.00 |
|---|---|---|
| | Court Cost: | $50.00 |
| | Judgment Total: | $3,800.00 |

Respondent is further ordered to correct immediately any and all outstanding above found violation(s).

_____

**Administrative Law Judge**

August 3, 2022

**Date**

The document has been copied to the following additional Respondents and/or Agents:

WISE ROAD BUSINESS CENTER
CO: SHEIKH, ANEEQA
3155 WEST WALLEN AVE
CHICAGO IL 60645

This order may be appealed to the Circuit Court of Cook County within 35 days of above date.

Village of Schaumburg 101 Schaumburg Ct, Schaumburg IL 60193
If you have any questions, please call the Community Development Department at (847) 923-3700.

# EXHIBIT C

VILLAGE OF SCHAUMBURG

2022-00245 975 W Wise - Parking Lot

STRUCTURE TO HAVE
CONCRETE COLLAR
REPLACE FRAME & LID WITH
FLAT OPEN GRATE

CLEAN CRACKS, REFILL,
SEAL PAVEMENT

PAVEMENT FAILING, MILL
AND RESURFACE

CONCRETE COLLAR NEW STRUCTURE LID

CRACK FILL AND SEAL

MILL AND RESURFACE

0  0.0075  0.015       0.03
                        mi

N

VOSGIS
Date: 2/11/2022



975 W. Wise Road

Sealing + Coating
LOT 16

NOTE: "LIMIT OF TOPOGRAPHY AS SHOWN IS PER REQUEST OF CLIENT" 5/8/15

LOT 15

LOT 17

manhole

repairs

Repairs

O manhole

2 STORY BRICK COMERCIAL BUILDING NO. 975

Structure to have concrete collar. Replace frame & lid with flat open grate. See previous page detail.

VILLAGE OF SCHAUMBURG
Engineering Division

Permit Number ___22-00245___

Approved By ___Alexandra Moss___

Date ___4/25/2022___

FND CUT CROSS

STATE OF ILLINOIS)  s.s.
COUNTY OF COOK)
I RICHARD R. KANTHAPHIXAY

EXHIBIT  C2

# VILLAGE OF SCHAUMBURG

## The construction being carried on upon these premises is covered by

# VILLAGE PERMIT

## No. 22-00245

Issue Date: 5/2/2022
Expiration Date: 5/1/2024

Contractor: ROCK SOLID CONSTRUCTION & CONTRACTING IN
Owner: CHICAGO TITLE AND LAND TRUST #8002347068
Location: 975 W WISE RD
Project/Activity: SITE & PARK M&R COMM IND NSF



**PAID** 5/2/22
By_____

For inspections, please call Permit Services at 847-923-4420 before 4 p.m. on the business day before the inspection. If you would like to request an approximate time frame, you may do so the morning of your scheduled inspection by calling Permit Services between 7:30 a.m. and 8 a.m.

## CALL JULIE AT 811 (800-892-0123) BEFORE YOU DIG

NOTE: Issuance of this permit does not release applicant from complying with any restrictions recorded against the property, including Homeowners Association covenants.

Positive drainage of lot must be maintained.

This permit authorizes work to proceed in full compliance with the village building code, zoning ordinance and related rules and regulations.

This notice must be posted in plain view from the street and remain until after completion of this permitted project. Village inspectors are instructed to stop work where no permit is displayed. One complete set of village stamped and approved construction documents shall be retained at the construction site at all times.

Issued by the Director of Community Development

# EXHIBIT D



# CONCRETE COLLAR
# FOR DRAINAGE STRUCTURE
(*Reverse Pitch for Sanitary
and Water Structures)

MAY, 2011

# EXHIBIT E

E





# EXHIBIT

# E 2, E 3, E 4, E 5



E 2





E 4

E 5



# EXHIBIT F

F

# Chicago Metal Supply & Fabrication Inc

**4940 W. Grand Ave.**
**Chicago, IL  60639**

**Phone #**  773-227-6200
**Fax #**   773-227-1700

# Estimate

| Date | Estimate # |
|------|-----------|
| 4/4/2022 | 31234 |

| Name / Address | Ship To |
|----------------|---------|
| Cash Sales | |

| P.O. No. | | | Sales Rep | Tania | Job | |
|----------|--|--|-----------|-------|-----|--|

| Qty | Description | U/M | Cost | Total |
|-----|-------------|-----|------|-------|
| 1 | Custom  Glavanized piece 16"x 27 1/2" - Mat: Galvanized steel16  ga | ea | 237.60 | 237.60T |

| **PRICING IS ONLY GOOD FOR 14 DAYS** | | **Subtotal** | $237.60 |
|---|---|---|---|
| DELIVERED BY: | SIGNATURE: | **Sales Tax (10.25%)** | $24.35 |
| | | **Total** | $261.95 |

# EXHIBIT  G

# PETERSEN BROS. PLASTICS, INC.
## 2929 N PULASKI RD
## CHICAGO IL 60641
773-286-5666

**INVOICE**

| Date | Invoice # |
|------|-----------|
| 4/22/2022 | V81638 |

**Bill To:**

Rock Solid Construction
Zafar
847-414-9670

PAID
04/22/2022

**Ship To:**

PAID
BALANCE PAID —CA
4/26/22.

| P.O. Number | Terms | Rep | Ship Date | Ship Via | Payment Due |
|-------------|-------|-----|-----------|----------|-------------|
|  | C.O.D. | KEN | 4/22/2022 |  | 4/22/2022 |

| Qty | Qty Sent | Description | Unit Price | Amount |
|-----|----------|-------------|------------|--------|
| 6 |  | Material..................CAST ACRYLIC<br>Thickness..............(.118) 1/8"<br>Color......................#2447 WHITE<br>Opacity..................TRANSLUCENT<br>Size.......................... 22.5 x 96"<br>Edges.................... saw cut<br><br>Factory length on 96" | 50.00 | 300.00T |
| 1 |  | Credit / Debit Card Processing Fee | 9.92 | 9.92 |

A monthly service fee may be added to past due invoices along with any attorneys' fees, collection agency fees and court costs in the event action for collection must be taken. Orders paid with a credit card require a 3% processing fee. All claims for freight damage must be taken with delivering carrier. No claims allowed unless filed within 5 days from date of delivery.

| | |
|---|---|
| Subtotal | $309.92 |
| Sales Tax  (10.25%) | $30.75 |
| Total | $340.67 |
| Payments/Credits | -$340.67 |
| **Balance Due** | $0.00 |

# EXHIBIT

# G 1

# PETERSEN BROS. PLASTICS, INC.
2929 N PULASKI RD
CHICAGO IL 60641

773-286-5666

**INVOICE**

| Date | Invoice # |
|---|---|
| 4/22/2022 | V81638 |

Bill To:

Rock Solid Construction
Zafar
847-414-9670

Ship To:

| P.O. Number | Terms | Rep | Ship Date | Ship Via | Payment Due |
|---|---|---|---|---|---|
| | C.O.D. | KEN | 4/22/2022 | | 4/22/2022 |

| Qty | Qty Sent | Description | Unit Price | Amount |
|---|---|---|---|---|
| 6 | | Material...................CAST ACRYLIC<br>Thickness...............(.118) 1/8"<br>Color.......................#2447 WHITE<br>Opacity...................TRANSLUCENT<br>Size......................... 22.5 x 96"<br>Edges..................... saw cut<br><br>Factory length on 96" | 50.00 | 300.00T |
| 1 | | Credit / Debit Card Processing Fee | 9.92 | 9.92 |

A monthly service fee may be added to past due invoices along with any attorneys' fees, collection agency fees and court costs in the event action for collection must be taken. Orders paid with a credit card require a 3% processing fee. All claims for freight damage must be taken with delivering carrier. No claims allowed unless filed within 5 days from date of delivery.

| | |
|---|---|
| Subtotal | $309.92 |
| Sales Tax (10.25%) | $30.75 |
| Total | $340.67 |
| Payments/Credits | $0.00 |
| **Balance Due** | **$340.67** |

# EXHIBIT H

# E.D.A SIGNS REPAIR SERVICES

## QUALITY SIGNS FOR LESS
### LED LIGHTS.CHANNEL LETTERS.BOX SIGNS
### 7532 S PAULINA ST.CHICAGO, IL 60620
## MIGUEL TEL.312-8690840

**CO.NAME** Fiftyone Diropery Loranic     **DATE**

**ADDRESS** 975 west ___ road

**CO.PHONE#**

| QTY | JOB: DESCRIPTION | TOTAL |
|---|---|---|
| 1 | 14FT LISI 1318 | 1000 300 |
| 1 | ___ LED with ___ | |
| | ___ | |

DEPOSIT $650
CHECK # 1776

**CITY PERMITS ARE NOT INCLUDED IN SIGN ESTIMATE**

A 50% DEPOSIT TOWARDS THE JOB(S) IS REQUIRED. BALANCE IS DUE WHEN THE WORK IS COMPLETED. DEPOSIT WILL NOT BE REFUNDED. BY SIGNING THIS CONTRACT BELOW, WHICH STATES THE FOLLOWING; I/ WE THE BUYER READ AND FULLY UNDERSTOOD THE TERMS AND CONDITIONS APPLIED AND IMPLIED HERE IN AND AUTHORIZE EDA SIGNS REPAIR SERVICES TO BEGIN THE JOB.ANY ALTERATIONS OR DEVIATION BY THE CLIENT FROM THE ABOVE SPECEFICATIONS (THAT WILL INVOLVE ADDITIONAL COSTS), SUCH COST WILL BE THE RESPONSIBILITY OF THE CLIENT.

THE ABOVE SPECEFICATIONS AND CONDITIONS ARE SATISFACTORY AND ARE HERE BY ACCEPTANCE, YOU ARE AUTHORIZED TO DO THE REPAIRS AS SPECIFIED.

signature _____ date _____

| TOTAL | 1300 |
| DEPOSIT | 650 |
| BALANCE | 650 |

# EXHIBIT I



# GTO SEALCOATING & PAVING

| Sealcoating, Paving, Concrete | Aditional Cost for Sealcoating |
|---|---|
| | Seal Coating should be done no sooner than 1 year after installation of driveway |

**Free Estimates / Bonded / Insured**
*Arturo Soto Cell: 630.244.4688*
*Luiz Soto: 630.492.3190   Cell:630.808.7175*

**NAME**

**STREET**  975 wes wisc Road

**CITY, STATE AND ZIP CODE**  Schaumburd IL

**RES.** | **BUS.**

We hereby submit specifications and estimates for:
(CIRCLE NUMBERS INDICATING WORK TO BE PERFORMED)
1. Removal all excavated material from site.
2. Removal old asphalt, concrete, dirt, grass.
3. Add to existing stone base # _____.
4. Put in a new ___ inch stone base # ____ in new area(s).
5. Grade and compact stone base to pave.
6. Resurface over old pavement.
7. Prime old pavement with type b primer.
8. _____ inch binder.
9. Apply _____ inches 1-11 surface asphalt.
10. Roll with vibratory roller = _____ ton.
Liability and worked compensation insurance certificate provided on request.

**SQ. FT.**

**DATE**  4/30/22

**Seal Coating** Square feet 3944/6 total 5,128

**Re-String** ___ Square feet ___ total 400 00

**Crack Filling** Square feet ___ total ___

Patching Square feet ___ total 4,556

● new MHO Square feet ___ total ___

Square feet ___ total 1,500

Square feet ___ total ___

Square feet ___ total ___

Square feet ___ total 1,400

Square feet ___ total ___

Square feet ___ total ~~___~~

We propose hereby to furnish material and labor-complete in accordance with above specifications, for sum of.

_____ dollars $ _____

**Additional cost for permit fee**

Down Payment $ 2,000.—
Balance due upon completion $ 9,000.—

## GUARANTEE

Labor and material is guaranteed 100% for one year from date of completion.
No guarantee against cracks caused from ground growth and/or earth movement.

**Authorized Signature** _____

Note: This proposal may be withdraw by us, if not accepted with 30 days.

**Acceptace of Proposal-** the above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work specified. Payment will be made as outline above.
Date of Acceptance: _____

**Signature X** _____

SIGN AND RETURN WHITE COPY

# EXHIBIT  J

# E.D.A SIGNS  REPAIR SEVICES

## QUALITY SIGNS FOR LESS
### LED LIGHTS.CHANNEL LETTERS.BOX SIGNS
### 7532 S PAULINA ST.CHICAGO, IL  60620

## MIGUEL TEL.312-8690840

**CO.NAME**

**DATE**

**ADDRESS**

**CO.PHONE#**

| QTY | JOB: DESCRIPTION | TOTAL |
|---|---|---|
| 12 | LED LAMPS        300W | 2160 |
|  | Labor  Tow instALL | 1000 |
| 1 | 12FT   4½ × 4½ × 12FT   ~~300~~ | 600 |
| 1 | MetAL PlAT. ½inch × 12 inch ~~125~~ | 125 |
|  | Labor | 350 |

## CITY PERMITS ARE NOT INCLUDED IN SIGN ESTIMATE

A 50% DEPOSIT TOWARDS THE JOB(S) IS REQUIRED. BALANCE IS DUE WHEN THE WORK IS
COMPLETED. DEPOSIT WILL NOT BE REFUNDED. BY SIGNING THIS CONTRACT BELOW,
WHICH STATES THE FOLLOWING; I/ WE THE BUYER READ AND FULLY UNDERSTOOD THE
TERMS AND CONDITIONS APPLIED AND IMPLIED HERE IN AND AUTHORIZE EDA SIGNS REPAIR
SERVICES TO BEGIN THE JOB. ANY ALTERATIONS OR DEVIATION BY THE CLIENT FROM THE
ABOVE SPECEFICATIONS (THAT WILL INVOLVE ADDITIONAL COSTS), SUCH COST WILL BE
THE RESPONSIBILITY OF THE CLIENT.

THE ABOVE SPECEFICATIONS AND CONDITIONS ARE SATISFACTORY AND ARE HERE BY ACCEPTANCE,
YOU ARE AUTHORIZED TO DO THE REPAIRS AS SPECIFIED.

signature _____ date _____

**TOTAL** 4235

**DEPOSIT**

**BALANCE**

# EXHIBIT  L

Exhibit L

**From:** bjung@schaumburg.com,
**To:** zafarsheikh313@aol.com,
**Subject:** Re: 975-983 Wise road Facade
**Date:** Mon, Dec 12, 2022 9:21 am

Hello Zafar,
I have forwarded your facade drawings to Community Development Planner, Parth, for review.
Thank you.

**Brian Jung, ARCHITECT, LEED AP, ICC CERTIFIED PLANS EXAMINER**
Plans Examiner | Community Development

**P** (847) 923-3975
101 Schaumburg Court, Schaumburg, IL 60193
Village of Schaumburg | Progress Through Thoughtful Planning

**From:** zafar sheikh <zafarsheikh313@aol.com>
**Sent:** Wednesday, December 7, 2022 10:50 AM
**To:** Brian Jung <bjung@schaumburg.com>
**Subject:** 975-983 Wise road Facade

> **CAUTION:** This email is from outside the organization.
> Use caution before opening any links or attachments.

Hello Brian:

Enclosed are the plans which were also sent earlier to you in September.

Regards
zafar sheikh

-----Original Message-----
**From:** zafar sheikh <zafarsheikh313@aol.com>
**To:** bjung@schaumburg.com <bjung@schaumburg.com>
**Sent:** Fri, Sep 23, 2022 9:54 am
**Subject:** Wise road Facade

Hello Brian:

The siding would be like this, as it appears underneath. The materials that it comes in is either wood or composite materials. Plans were sent to you by Architect Ken Brandeis last month. Ken also told me that he sent you the corrected address.

Regarding the Hood permit, as you recall when I saw you in April, you said that you could issue the permit shortly, but wanted more information as to our interior plans, and we should submit those. The interior plans were submitted by Architect Ken Brandeis few weeks ago. So please at this stage issue us the Hood permit. The interior plans, and the siding permit, we can wait. But please approve the Hood permit.

Regards:
Zafar Sheikh

FILED DATE: 3/1/2023 3:08 PM   2022CH08778

# EXHIBIT   M

# Report a Concern/Complaint

For more information, please click on the name of each office to expand the menu.

## Office of Professional Standards

If you have a complaint or concern against a Village of Schaumburg **employee *and* feel the Manager and/or Director in charge did not resolve** the reported issue to your satisfaction, complaints can be **escalated** to the **Office of Professional Standards**:

- By phone at 847-923-4715

- By email to OPS@schaumburg.com

- Or by completing the Complaint Receipt Form and mailing it to:

    Office of Professional Standards
    101 Schaumburg Court
    Schaumburg, Illinois 60193

The Village of Schaumburg is dedicated to the goal of providing excellent services and programs to meet the needs of our community and those who visit. In keeping with this goal, the village has established an Office of Professional Standards.

The Office of Professional Standards Manager (OPS) reports directly to the Village Manager and is an independent administrative investigator responsible for maintaining the integrity of the Village of Schaumburg and its personnel by conducting full, fair, and objective fact-finding investigations. The OPS is thoroughly familiar with the administrative functions of the village, all organizational policies, rules, regulations, administrative protocols, labor agreements, personnel policies, code of ordinances, federal and state laws, and applicable accreditation agency standards.

## Notice of Nondiscrimination

The Village of Schaumburg complies with Federal civil rights laws and is committed to providing its programs and services without discrimination in accordance with:

1. *Title VI of the Civil Rights Act of 1964,* which prohibits discrimination based on race, color, or national origin (including language).
2. *Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973,* which prohibits discrimination based on disability.
3. *Title IX of the Educations Amendments Act of 1972,* which prohibits discrimination based on sex in education programs or activities.
4. *Age Discrimination Act of 1975,* which prohibits discrimination based on age.
5. *U.S. Department of Homeland Security regulation 6 C.F.R. Part 19,* which prohibits discrimination based on religion in social service programs.

If a citizen or employee feels that an employee has discriminated on the basis of race, color, national origin, disability, sex, or age, a complaint can be submitted to the OPS in accordance with the procedure above.

## General Communication

All general communication (compliments, questions, or concerns) can be reported online using the "We're Listening" form or by contacting a Department Director.

Complete a Customer Service Request to request a non-emergency request or service. You may also report your request by phone by simply **dialing 311** (anywhere within the Schaumburg borders) to reach a village representative.

**Office of Auditing Official**

# EXHIBIT   N

**From:** zafarsheikh313@aol.com,
**To:** btownsend@schaumburg.com,
**Cc:** tdailly@schaumburg.com,
**Bcc:** OPS@schaumburg.com,
**Subject:** Re: Retaliation by the City of Schaumburg
**Date:** Fri, Mar 17, 2023 11:31 am

Dear Mr. Townsend:

I was saddened to learn that the Office of the Professional standards of the Village of Schaumburg will not review our complaint. Not investigating our complaint on administrative level by the Village of Schaumburg is an additional act of retaliation. The Village is retaliating against us for going to Court and enforcing our Civil and Constitutional rights. Plainly speaking, the *quid pro quo* that the Village is suggesting is that the Village's Office of Professional Standards will only investigate our complaint, if we forfeit our rights to go to Court.

Every investigative body including the U.S. government, State of Illinois, and City of Chicago have Inspector Generals who investigate employee misconduct regardless of whether the victims of misconduct exercise their rights to go to Court. After these administrative bodies complete their investigations, and if the matter is pending in Court, notify the Courts that they undertook their internal investigations, and if they find misconduct, notify courts that such and such misconduct was discovered and they are working to resolve the issues, and are taking such and such steps that such things do not occur in future. In case they find no misconduct, they also notify the Courts that their internal investigations have revealed no misconduct. The sole purpose of administrative review is to stop the complained of misconduct from continuing. In other words, the Village wants the misconduct, if true, as alleged in our complaint, continue and sully more victims, till the court case is resolved.

Does the mandate under which the Office of Professional Standards (OPS) was established by the Village of Schaumburg say in their charter that it will not investigate administrative complaints of misconduct if the victims choose to exercise their constitutional rights to go to Court? I will appreciate if I could hear directly from the overseer of the OPS of the Village of Schaumburg.

Regards:
Zafar Sheikh

-----Original Message-----
From: Brian Townsend <btownsend@schaumburg.com>
To: zafar sheikh <zafarsheikh313@aol.com>
Cc: Tom Dailly <tdailly@schaumburg.com>
Sent: Thu, Mar 16, 2023 9:58 am
Subject: Re: Complaint

Dear Mr. Sheikh,

Thank you for your undated letter, received March 13, 2023, complaining about the performance of two Village employees with whom you have interacted, Brian Jung and Robert Kryder.

The Village of Schaumburg is dedicated to the goal of providing excellent services and programs to meet the needs of our community and those who visit. In keeping with this goal, the village has established an Office of Professional Standards.

The Office of Professional Standards Manager (OPS) reports directly to the Village Manager and is an independent administrative investigator responsible for maintaining the integrity of the Village of Schaumburg and its personnel by conducting full, fair, and objective fact-finding investigations. The OPS is thoroughly familiar with the administrative functions of the village, all organizational policies, rules, regulations, administrative protocols, labor agreements, personnel policies, code of ordinances, federal and state laws, and applicable accreditation agency standards.

While it is important to follow-up on complaints regarding Village employees, and OPS would typically be the process for a full investigation, my understanding is that you have filed a complaint in the Circuit Court of Cook

County, asserting the same essential facts you have alleged in your letter. More recently, you expressed an interest in filing a new complaint in federal court.

With your allegations already before a third party that is entrusted by law to deal with such matters, it is not appropriate to take any action to investigate or follow up on your claims at this time. Rest assured that any decisions made by the court involving your allegations will result in appropriate actions by the village.

Sincerely,

**Brian Townsend**
Village Manager

**P** (847) 923-4700
101 Schaumburg Court, Schaumburg, IL 60193
Village of Schaumburg | Progress Through Thoughtful Planning

---

**From:** zafar sheikh <zafarsheikh313@aol.com>
**Sent:** Wednesday, March 8, 2023 10:45 AM
**To:** Tom Dailly <tdailly@schaumburg.com>
**Cc:** OPS <OPS@schaumburg.com>
**Subject:** Complaint

> **CAUTION:** This email is from outside the organization.
> Use caution before opening any links or attachments.

Enclosed is a formal complaint against official misconduct of Village of Schaumburg employees.

# EXHIBIT O

**From:** btownsend@schaumburg.com,
**To:** zafarsheikh313@aol.com,
**Cc:** tdailly@schaumburg.com, LCMalina@KTJLAW.com, phewson@schaumburg.com,
**Subject:** RE: Retaliation by the City of Schaumburg
**Date:** Fri, Mar 17, 2023 11:38 am

Mr. Sheikh:

The decisions made by the village, which also serve as the basis for your complaints against the village and its staff members, were made at the direction and advise of legal counsel.

You may direct any further correspondence regarding your concerns to the Village Attorney, Mr. Lance Malina.

Sincerely,

**Brian Townsend**
Village Manager

**P** (847) 923-4700
101 Schaumburg Court, Schaumburg, IL 60193
Village of Schaumburg | Progress Through Thoughtful Planning

**From:** zafar sheikh <zafarsheikh313@aol.com>
**Sent:** Friday, March 17, 2023 11:31 AM
**To:** Brian Townsend <btownsend@schaumburg.com>
**Cc:** Tom Dailly <tdailly@schaumburg.com>
**Subject:** Re: Retaliation by the City of Schaumburg

Dear Mr. Townsend:

I was saddened to learn that the Office of the Professional standards of the Village of Schaumburg will not review our complaint. Not investigating our complaint on administrative level by the Village of Schaumburg is an additional act of retaliation. The Village is retaliating against us for going to Court and enforcing our Civil and Constitutional rights. Plainly speaking, the *quid pro quo* that the Village is suggesting is that the Village's Office of Professional Standards will only investigate our complaint, if we forfeit our rights to go to Court.

Every investigative body including the U.S. government, State of Illinois, and City of Chicago have Inspector Generals who investigate employee misconduct regardless of whether the victims of misconduct exercise their rights to go to Court. After these administrative bodies complete their investigations, and if the matter is pending in Court, notify the Courts that they undertook their internal investigations, and if they find misconduct, notify courts that such and such misconduct was discovered and they are working to resolve the issues, and are taking such and such steps that such things do not occur in future. In case they find no misconduct, they also notify the Courts that their internal investigations have revealed no misconduct. The sole purpose of administrative review is to stop the complained of misconduct from continuing. In other words, the Village wants the misconduct, if true, as alleged in our complaint, continue and sully more victims, till the court case is resolved.

Does the mandate under which the Office of Professional Standards (OPS) was established by the Village of Schaumburg say in their charter that it will not investigate administrative complaints of misconduct if the victims choose to exercise their constitutional rights to go to Court? I will appreciate if I could hear directly from the overseer of the OPS of the Village of Schaumburg.

Regards:
Zafar Sheikh

-----Original Message-----
From: Brian Townsend <btownsend@schaumburg.com>
To: zafar sheikh <zafarsheikh313@aol.com>

# EXHIBIT K

1

SCHAUMBURG ADMINISTRATIVE ADJUDICATION DALE
SCHAUMBURG, COOK COUNTY, STATE OF ILLINOIS

VILLAGE OF SCHAUMBURG,        )
an Illinois municipal         )
corporation,                  )
                              )
            Petitioner,       )
                              )
        and                   )   2022-05-04
                              )
CHICAGO TITLE AND LAND        )
TRUST COMPANY,                )
                              )
            Respondent.       )

REPORT OF PROCEEDINGS had and testimony

taken at the hearing of the above-entitled

matter before the Administrative Law Judge DAVID

ETERNO, on May 4, 2022, and reported from an

audio recording provided to KATHLEEN W. BONO,

Certified Shorthand Reporter, and then reduced

to writing by stenographic means from which the

following partial transcript was produced.

PRESENT:

        MR. LANCE MALINA,
            Prosecutor for Village of Schaumburg;

        MS. DEBORAH PARRAN, Village Employee;

        MR. ZAFAR SHEIKH, Respondent;

        MR. EDWARD PEREZ, Tenant of Respondent.

2

1    THE COURT: Good afternoon. This is
2    the May 4, 2022 docket for the village of
3    Schaumburg. My name is Judge Dave Eterno. A
4    couple of things before we proceed.
5         Matters are here today as a result
6    of allegations by the village that somehow, some
7    way, on a previous date in time, there was an
8    inspection of the premises that you own or are
9    here representing and may have observed one or
01:25PM 10   more violations of the code so a complaint was
11   filed, you are here responding and I have to
12   determine how to proceed. Are you liable or are
13   you not liable? In other words, guilty or not
14   guilty.
15        Now you are going to hear some
16   terms like respondent, liable, not liable.
17   Those are synonymous. They mean the same thing
18   as defendant, guilty, not guilty.
19        But you are here civilly not
01:25PM 20   criminally and that is why you are known as a
21   respondent and not a defendant. That's why I
22   have to make a determination if you are liable

3

1    or not liable as opposed to guilty or not
2    guilty. All right.
3         Cases can proceed in one of two
4    ways: Either by trial or by some sort of a
5    proposed agreement which I'll get to
6    momentarily.
7         When your matter is called, do step
8    up to that center podium. Keep your voice up,
9    everything is being recorded to preserve a
01:26PM 10   record. Both sides have a right of an appeal
11   within 35 days of today's date my appellate
12   court would review a copy of the transcript.
13        So, if I ask you any yes or no
14   questions, I need you to actually say yes or no
15   in response, don't just nod or shake your head;
16   that microphone can't pick it up.
17        When you do step up, if you're not
18   an attorney, I'm going to swear you in, then the
19   case will proceed. All right.
01:26PM 20   Now, if it is proceeding by a
21   proposed agreement, that means you have spoken
22   with the village's prosecutor and you are in

4

1    agreement on what would be happening here today
2    and that can take many forms depending upon the
3    specifics of your case.
4         If the parties cannot reach an
5    agreement, that's fine, everyone has a right to
6    demand trial. All right. Accordingly, at a
7    trial, I have to make a determination whether
8    you are liable or not. All right.
9         The way I do that is by answering
01:27PM 10   one question: Is it more likely than not what
11   the village alleged was observed? More likely
12   than not. Okay. That is called a preponderance
13   of the evidence. I'm sure you have heard of
14   beyond a reasonable doubt for criminal cases,
15   all right. Well, these are civil, so they
16   merely need to prove their case by a
17   preponderance of the evidence.
18        So should you go to trial, if I
19   find you liable, it doesn't mean that I think
01:27PM 20   you have lied to me. It means what you are
21   saying might be true, I'm finding it's more
22   likely what the village has alleged occurred

5

1    than not. Okay.
2         If I find you liable, it is too
3    late then to say, All right, I'll take the offer
4    that the prosecutor offered me. No, I won't
5    accept it.
6         Additionally, if in fact it
7    involves a condition of your property, all
8    right, coming back in to compliance is not a
9    defense to liability. The issue is: What was
01:28PM 10   the property like at the time of inspection?
11   All right. What was it like at that time? All
12   right. Not how are things today.
13        It's like a speeding ticket. On
14   April 30th, were you going down Higgins Road
15   traveling 85 miles an hour or not? Not how have
16   you been driving since then. All right. What
17   were things like at the time of inspection?
18   That is the issue. All right. I didn't know it
19   was a violation. That's not a defense. All
01:28PM 20   right. That is not a defense.
21        Things don't get to be in violation
22   status on properties just overnight. Usually it

**6**

1  takes a while and it shouldn't take the village
2  to say, Hey, look, you have to take care of
3  this. All right.
4      Now, regardless of whatever occurs,
5  whether you are found liable, not liable, if the
6  case is continued, at the conclusion, you will
7  receive an order printed out bearing my digital
8  signature. Even if the matter is dismissed,
9  when you get home, if you don't want to hold
01:29PM 10  onto the paper, I get it. Maybe take a
11  photograph of it on your phone so you will have
12  something. All right. If, in fact, the case is
13  continued, definitely don't lose that
14  continuance order because you won't receive
15  anything else in the mail telling you the next
16  court date. All right.
17      If you are found liable, some sort
18  of fines and/or court costs are imposed. Then
19  what you will want to do is go down the hall to
01:29PM 20  your left to their finance department. They
21  will have information on how fines are paid,
22  methods, time frames, et cetera. I don't have

**7**

1  that information; I'm not an employee of this
2  village. I preside in many cities and towns and
3  every finance department does it a little bit
4  differently, so those questions are best left
5  for them. All right.
6      Finally, do you have any questions
7  for me?
8      (No response.)
9      All right. Counsel, good
01:30PM 10  afternoon.
11      MR. LANCE: Good afternoon. Lance
12  Malina, representing the village on all matters.
13      THE COURT: Thank you.
14      * * * *
15      (WHEREUPON, there were matters
16      called but not transcribed at
17      this time.)
18      THE COURT: Village? The gentleman
19  with the tenant.
20      MR. MALINA: Yes. Docket No.
21  2021 CD 0218, Respondent Chicago Title and Land
22  Trust Company.

**8**

1      THE COURT: All right. So your tenant
2  has come. He's here. All right. Perfect. I'm
3  going to remind you you are still under oath.
4      Good afternoon. In case you have
5  to testify, can you state your name for me.
6      MR. PEREZ: Edward Perez.
7      THE COURT: Thank you, Mr. Perez.
8      (Witness sworn.)
9      THE COURT: Thank you. All right.
10      Here today on a continuance.
11      MR. SHEIKH: Yes, sir.
12      THE COURT: I know the matter was first
13  up in court, I believe, in December. At that
14  time, regarding the charges on this case, there
15  was a plea of liable, the matter was continued.
16  There were preliminary fines that were input,
17  continued by agreement to February. In
18  February, then it was continued to April. I
19  don't believe any default was entered. Then it
20  was continued to today's date.
21      Okay. So, December 1st, there's a
22  plea of liable, preliminary fines were entered,

**9**

1  and the matter has been continued then a few
2  months to give you a chance to achieve
3  compliance and possibly then achieve a reduction
4  of fines.
5      MR. SHEIKH: Right.
6      THE COURT: Okay. So where do you
7  stand on this now?
8      MR. SHEIKH: Judge, we had a few
9  technical issues. One was regarding the
01:39PM 10  address, you know, of the property, and he said
11  some of the numbers are not visible. So what we
12  did was we painted over the numbers but
13  inspector said, No you should get new numbers.
14  So we bought new numbers, so he was satisfied.
15      The other thing was about our pole
16  light, a tree branch fell on the light and it
17  broke the pole. So he said you should get
18  another pole. First, he said you should remove
19  because it could fall on somebody.
01:39PM 20      THE COURT: That's logical.
21      MR. SHEIKH: Right. So we remove the
22  pole. So he came and he said we did, you know,

10

1 comply with what you had. He said, no, we
2 should replace the pole. So we ordered the
3 pole, the pole has been ordered, you know, we
4 showed him the receipts and everything, so he's
5 satisfied.
6         Third was an issue with other
7 signage. Some of the tenants had left and the
8 old sign, you know, the plastic sign, it showed
9 their names, so he said you should change those.
01:40PM 10 So what we did was that we altered them.
11         THE COURT: So you flipped them?
12         MR. SHEIKH: Right, we flipped them.
13 He said you flipped them but still you could see
14 a little bit and doesn't look good. So he said
15 you should replace them completely. So we did
16 replace them completely and he inspected and he
17 was satisfied.
18         THE COURT: Okay.
19         MR. SHEIKH: So the only other issue --
01:40PM 20 another issue was a parking lot.
21         THE COURT: Handicap spots?
22         MR. SHEIKH: Yes. We have complied

11

1 with that also.
2         The other one about parking lot,
3 some issue with the parking lot, you know, some
4 hole and some manhole he said you should get a
5 straight one. The one we had had bumps.
6         So we have already signed the
7 contract so that will be taken care of. Asphalt
8 plants have opened few weeks ago. But since
9 then, it's been raining off and on and the
01:41PM 10 contractor said you need at least five, six
11 sunny days for me to come in and asphalt the
12 parking lot. So Inspector Adam was made aware
13 of it. He has been sent the contract and the
14 city has also issued us a permit. We got the
15 permit a few days ago.
16         THE COURT: Okay. Good.
17         MR. MALINA: On the 2nd they got the
18 permit.
19         THE COURT: Great.
01:41PM 20         MR. SHEIKH: Yes. So we are all ready
21 to take care of that issue as well.
22         The only other issue is about the

12

1 parking situation with our tenant and Inspector
2 Adam is very unhappy. He said, you have way
3 more car than are justified and he said he not
4 allow more than seven, eight cars and so I
5 wanted my tenant to come here and explain why
6 the cars are not being removed.
7         So he thinks he had issue with some
8 of his clients, you know, they leave their car
9 and some parts are, you know, on order or
01:42PM 10 something, but Inspector Adam said this is no
11 justification, you know, for such a lapse, some
12 cars are there for months. So he can explain,
13 you know, what's going on and maybe he will ask
14 for some leniency or some more time or whatever.
15         THE COURT: Mr. Perez?
16         MR. PEREZ: Yes.
17         Judge, a lot of cars, you know, the
18 customers people never pick them up, need an
19 engine never pay me money. So what I did some
01:42PM 20 people I call they have to pick up the car.
21 They have enough money. Right now I move a lot
22 of car, you know. But the car I got right now I

13

1 need to make emission, emission test, you know,
2 he said got some car but inspector came
3 yesterday told me you got to remove couple more
4 cars, you know.
5         THE COURT: So when could you have the
6 additional cars removed?
7         MR. PEREZ: I move the car two weeks
8 ago.
9         THE COURT: Okay. Does the village
01:43PM 10 have a status of the cars then?
11         Mr. Perez has said that there's
12 some additional cars removed about two weeks
13 ago.
14         Are there any more cars that need
15 to be removed?
16         MR. PEREZ: Yes, I got maybe another
17 six or eight cars, you know, customer car, you
18 know, it does involve emission test, you know.
19         THE COURT: Do you know when those cars
01:43PM 20 will be gone?
21         MR. PEREZ: I'm not working on those
22 for now but no other one but maybe one is there,

14

1  you know, that one for emission test I keep for
2  about three days, drive it, drive it, we make
3  the emission but -- so now I have to fix two.
4        THE COURT: So it sounds like the only
5  items that are remaining are fixing the asphalt
6  that you just got the permit for that.
7        MR. SHEIKH: Yes, your Honor.
8        THE COURT: Okay. And removing more of
9  the cars. Okay. So --
01:44PM 10     MR. MALINA: I'm trying to figure out
11  so we think for sure there never was a default
12  so that motion --
13        THE COURT: Right. Right. I think it
14  was an error entry. And so --
15        MR. MALINA: So where I am is -- so
16  what I think our position is this. On Count I
17  we don't have compliance but we do have a permit
18  now.
19        THE COURT: Right.
01:45PM 20     MR. MALINA: Handicap sign Count 2 is
21  okay. The sign post issue is okay. The address
22  numbers are okay.

15

1        What about the parking lot light?
2  You said you ordered a new one?
3        MR. SHEIKH: Yes, I have a receipt.
4        MS. PARRAN: (Inaudible.)
5        MR. SHEIKH: No, there's no electrical
6  work.
7        MS. PARRAN: How are you going to light
8  the parking lot light? That's what it was
9  before.
01:45PM 10     MR. SHEIKH: The light will be
11  installed.
12        MS. PARRAN: With electricity that
13  needs --
14        MR. SHEIKH: Well, the electricity
15  already there. There's no pulling of the wire.
16  You just practically --
17        MS. PARRAN: You will need an
18  electrical permit.
19        MR. SHEIKH: Really?
20        MS. PARRAN: Yes.
21        MR. SHEIKH: Even to hook up the --
22        MS. PARRAN: Yes.

16

1        MR. SHEIKH: Okay.
2        MS. PARRAN: Based on the current
3  condition that's raised in the ground, yes.
4        MR. MALINA: Make sure that those wires
5  are in good condition.
6        MS. PARRAN: And it meets code and it's
7  been exposed for a very long time.
8        MR. SHEIKH: No, they have been
9  covered.
01:46PM 10     MS. PARRAN: Well, the whole thing I
11  don't recall when it was removed, do you?
12        MR. SHEIKH: When the pole was removed?
13        MS. PARRAN: Yes.
14        MR. SHEIKH: That was at least three
15  months ago.
16        MS. PARRAN: Well, it was more than
17  that.
18        MR. SHEIKH: Three or four months ago,
19  yes.
01:46PM 20     MS. PARRAN: In November is when we
21  issued the violation and it was pretty bad.
22        MR. SHEIKH: Right. But everything

17

1  will be covered up properly.
2        MS. PARRAN: Then it shouldn't be a
3  problem getting it approved but you will still
4  need an electrical --
5        MR. SHEIKH: I need a permit?
6        MS. PARRAN: Yes.
7        MR. SHEIKH: Okay.
8        MR. MALINA: But you have the fixture
9  ordered?
01:46PM 10     MR. SHEIKH: Yes.
11        MR. MALINA: So that should be fairly
12  straightforward. And then the vehicles.
13        THE COURT: So are you looking for a
14  one or two month date on this?
15        MR. MALINA: Yes. We need leave to --
16  we want to leave the $500 fine in place on
17  Counts 7 and 8. We can close out -- you are
18  going to do the parking lot work soon?
19        MR. SHEIKH: Yes.
01:47PM 20     THE COURT: That's okay. This is what
21  I -- as opposed to piecemealing it out, why
22  don't we just continue it for full compliance

18

1 and at that time then an agreement on fines can
2 be made. I think it would just be easier.
3        MR. MALINA: Then let's go to the
4 July 6th date so then you can do the work.
5        MR. SHEIKH: Okay.
6        THE COURT: Okay. So continued for
7 full compliance and reduction of fines to July
8 6th.
9        MR. SHEIKH: Okay. Okay, Judge.
10        THE COURT: I keep forgetting that,
11 July 6th. Okay. And if you're in full
12 compliance, then that should be a decent day for
13 you. Okay.
14        MR. SHEIKH: Thank you, Judge.
15        THE COURT: You're very welcome. I'm
16 going to give you a copy of the order.
17        Do you have any -- do either of you
18 have any questions for me?
19        MR. PEREZ: No, sir.
20        MR. SHEIKH: No, your Honor.
21        THE COURT: He dragged you here so he
22 said he is going to treat you to coffee, so just

19

1 letting you know.
2        MR. SHEIKH: Thank you, Judge.
3        * * * *
4        (WHEREUPON, there were matters
5        heard after this that were
6        not transcribed.)

20

STATE OF ILLINOIS )
              )
COUNTY OF DU PAGE )

        I, KATHLEEN W. BONO, CSR, do hereby
certify that I am a court reporter doing
business in the State of Illinois, that I
reported in shorthand the testimony given at the
hearing of said cause by listening to an
audiotape and that the foregoing is a true and
correct transcript of my shorthand notes so
taken as aforesaid.
        I have affixed my electronic
signature this 10th day of February 2023.

Kathleen W. Bono CSR
License No 084-1423

Case: 1:23-cv-03315 Document #: 1 Filed: 05/25/23 Page 75 of 77 PageID #:75

21

**$**

$500 [1] - 17:16

**0**

0218 [1] - 7:21
084-1423 [1] - 20:16

**1**

10th [1] - 20:12
1st [1] - 8:21

**2**

2 [1] - 14:20
2021 [1] - 7:21
2022 [2] - 1:12, 2:2
2022-05-04 [1] - 1:5
2023 [1] - 20:12
2nd [1] - 11:17

**3**

30th [1] - 5:14
35 [1] - 3:11

**4**

4 [2] - 1:12, 2:2

**6**

6th [3] - 18:4, 18:8, 18:11

**7**

7 [1] - 17:17

**8**

8 [1] - 17:17
85 [1] - 5:15

**A**

above-entitled [1] - 1:10
accept [1] - 5:5
accordingly [1] - 4:6
achieve [2] - 9:2, 9:3

Adam [3] - 11:12, 12:2, 12:10
additional [2] - 13:6, 13:12
additionally [1] - 5:6
address [2] - 9:10, 14:21
ADJUDICATION [1] - 1:1
ADMINISTRATIVE [1] - 1:1
Administrative [1] - 1:11
affixed [1] - 20:11
aforesaid [1] - 20:10
afternoon [4] - 2:1, 7:10, 7:11, 8:4
ago [6] - 11:8, 11:15, 13:8, 13:13, 16:15, 16:18
agreement [6] - 3:5, 3:21, 4:1, 4:5, 8:17, 18:1
allegations [1] - 2:6
alleged [2] - 4:11, 4:22
allow [1] - 12:4
altered [1] - 10:10
AND [1] - 1:6
answering [1] - 4:9
appeal [1] - 3:10
appellate [1] - 3:11
approved [1] - 17:3
April [2] - 5:14, 8:18
asphalt [3] - 11:7, 11:11, 14:5
attorney [1] - 3:18
audio [1] - 1:13
audiotape [1] - 20:8
aware [1] - 11:12

**B**

bad [1] - 16:21
based [1] - 16:2
bearing [1] - 6:7
best [1] - 7:4
beyond [1] - 4:14
bit [2] - 7:3, 10:14
BONO [2] - 1:13, 20:3
Bono [1] - 20:15
bought [1] - 9:14
branch [1] - 9:16
broke [1] - 9:17
bumps [1] - 11:5
business [1] - 20:5

**C**

cannot [1] - 4:4
car [8] - 12:3, 12:8, 12:20, 12:22, 13:2, 13:7, 13:17
care [3] - 6:2, 11:7, 11:21
cars [12] - 12:4, 12:6, 12:12, 12:17, 13:4, 13:6, 13:10, 13:12, 13:14, 13:17, 13:19, 14:9
case [7] - 3:19, 4:3, 4:16, 6:6, 6:12, 8:4, 8:14
cases [2] - 3:3, 4:14
CD [1] - 7:21
center [1] - 3:8
Certified [1] - 1:14
certify [1] - 20:4
cetera [1] - 6:22
chance [1] - 9:2
change [1] - 10:9
charges [1] - 8:14
CHICAGO [1] - 1:6
Chicago [1] - 7:21
cities [1] - 7:2
city [1] - 11:14
civil [1] - 4:15
civilly [1] - 2:19
clients [1] - 12:8
close [1] - 17:17
code [2] - 2:10, 16:6
coffee [1] - 18:22
coming [1] - 5:8
COMPANY [1] - 1:7
Company [1] - 7:22
complaint [1] - 2:10
completely [2] - 10:15, 10:16
compliance [6] - 5:8, 9:3, 14:17, 17:22, 18:7, 18:12
complied [1] - 10:22
comply [1] - 10:1
conclusion [1] - 6:6
condition [3] - 5:7, 16:3, 16:5
continuance [2] - 6:14, 8:10
continue [1] - 17:22
continued [8] - 6:6, 6:13, 8:15, 8:17, 8:18, 8:20, 9:1, 18:6
contract [2] - 11:7, 11:13
contractor [1] - 11:10

**C**

COOK [1] - 1:1
copy [2] - 3:12, 18:16
corporation [1] - 1:3
correct [1] - 20:9
costs [1] - 6:18
counsel [1] - 7:9
Count [2] - 14:16, 14:20
Counts [1] - 17:17
COUNTY [2] - 1:1, 20:2
couple [2] - 2:4, 13:3
court [5] - 3:12, 6:16, 6:18, 8:13, 20:4
COURT [28] - 2:1, 7:13, 7:18, 8:1, 8:7, 8:9, 8:12, 9:6, 9:20, 10:11, 10:18, 10:21, 11:16, 11:19, 12:15, 13:5, 13:9, 13:19, 14:4, 14:8, 14:13, 14:19, 17:13, 17:20, 18:6, 18:10, 18:15, 18:21
covered [2] - 16:9, 17:1
criminal [1] - 4:14
criminally [1] - 2:20
CSR [2] - 20:3, 20:15
current [1] - 16:2
customer [1] - 13:17
customers [1] - 12:18

**D**

DALE [1] - 1:1
date [6] - 2:7, 3:11, 6:16, 8:20, 17:14, 18:4
Dave [1] - 2:3
DAVID [1] - 1:11
days [4] - 3:11, 11:11, 11:15, 14:2
DEBORAH [1] - 1:19
December [2] - 8:13, 8:21
decent [1] - 18:12
default [2] - 8:19, 14:11
defendant [2] - 2:18, 2:21
defense [1] - 5:9, 5:19, 5:20
definitely [1] - 6:13
demand [1] - 4:6
department [2] - 6:20, 7:3

determination [2] - 2:22, 4:17
determine [1] - 2:12
differently [1] - 7:4
digital [1] - 6:7
dismissed [1] - 6:8
docket [2] - 2:2, 7:20
doubt [1] - 4:14
down [2] - 5:14, 6:19
dragged [1] - 18:21
drive [2] - 14:2
driving [1] - 5:16
DU [1] - 20:2

**E**

easier [1] - 18:2
EDWARD [1] - 1:21
Edward [1] - 8:6
eight [2] - 12:4, 13:17
either [2] - 3:4, 18:17
electrical [3] - 15:5, 15:18, 17:4
electricity [2] - 15:12, 15:14
electronic [1] - 20:11
emission [5] - 13:1, 13:18, 14:1, 14:3
Employee [1] - 1:19
employee [1] - 7:1
engine [1] - 12:19
entered [2] - 8:19, 8:22
entitled [1] - 1:10
entry [1] - 14:14
error [1] - 14:14
et [1] - 6:22
Eterno [1] - 2:3
ETERNO [1] - 1:12
evidence [2] - 4:13, 4:17
explain [2] - 12:5, 12:12
exposed [1] - 16:7

**F**

fact [2] - 5:6, 6:12
fairly [1] - 17:11
fall [1] - 9:19
February [3] - 8:17, 8:18, 20:12
fell [1] - 9:16
few [4] - 9:1, 9:8, 11:8, 11:15
figure [1] - 14:10
filed [1] - 2:11

7 of 9 sheets

KATHLEEN W. BONO, CSR 630-834-7779

finally [1] - 7:6
finance [2] - 6:20, 7:3
fine [2] - 4:5, 17:16
fines [7] - 6:18, 6:21, 8:16, 8:22, 9:4, 18:1, 18:7
first [2] - 8:12, 9:18
five [1] - 11:10
fix [1] - 14:3
fixing [1] - 14:5
fixture [1] - 17:8
flipped [3] - 10:11, 10:12, 10:13
following [1] - 1:16
foregoing [1] - 20:8
forgetting [1] - 18:10
forms [1] - 4:2
four [1] - 16:18
frames [1] - 6:22
full [3] - 17:22, 18:7, 18:11

### G

gentleman [1] - 7:18
given [1] - 20:6
great [1] - 11:19
ground [1] - 16:3
guilty [6] - 2:13, 2:14, 2:18, 3:1, 3:2

### H

hall [1] - 6:19
handicap [2] - 10:21, 14:20
head [1] - 3:15
hear [1] - 2:15
heard [2] - 4:13, 19:5
hearing [2] - 1:10, 20:7
hereby [1] - 20:3
Higgins [1] - 5:14
hold [1] - 6:9
hole [1] - 11:4
home [1] - 6:9
Honor [2] - 14:7, 18:20
hook [1] - 15:21
hour [1] - 5:15

### I

ILLINOIS [2] - 1:1, 20:1
Illinois [2] - 1:3, 20:5
imposed [1] - 6:18

inaudible [1] - 15:4
information [1] - 6:21, 7:1
input [1] - 8:16
inspected [1] - 10:16
inspection [3] - 2:8, 5:10, 5:17
inspector [2] - 9:13, 13:2
Inspector [3] - 11:12, 12:1, 12:10
installed [1] - 15:11
involve [1] - 13:18
involves [1] - 5:7
issue [10] - 5:9, 5:18, 10:6, 10:19, 10:20, 11:3, 11:21, 11:22, 12:7, 14:21
issued [2] - 11:14, 16:21
issues [1] - 9:9
items [1] - 14:5

### J

Judge [5] - 1:11, 2:3, 18:9, 18:14, 19:2
judge [2] - 9:8, 12:17
July [3] - 18:4, 18:7, 18:11
justification [1] - 12:11
justified [1] - 12:3

### K

KATHLEEN [2] - 1:13, 20:3
Kathleen [1] - 20:15
keep [3] - 3:8, 14:1, 18:10
known [1] - 2:20

### L

lance [1] - 7:11
LANCE [2] - 1:18, 7:11
Land [1] - 7:21
LAND [1] - 1:6
lapse [1] - 12:11
late [1] - 5:3
Law [1] - 1:11
least [2] - 11:10, 16:14
leave [3] - 12:8, 17:15, 17:16
left [3] - 6:20, 7:4,

10:7
leniency [1] - 12:14
letting [1] - 19:1
liability [1] - 5:9
liable [14] - 2:12, 2:13, 2:16, 2:22, 3:1, 4:8, 4:19, 5:2, 6:5, 6:17, 8:15, 8:22
License [1] - 20:16
lied [1] - 4:20
light [6] - 9:16, 15:1, 15:7, 15:8, 15:10
likely [3] - 4:10, 4:11, 4:22
listening [1] - 20:7
logical [1] - 9:20
look [2] - 6:2, 10:14
looking [1] - 17:13
lose [1] - 6:13

### M

mail [1] - 6:15
MALINA [11] - 1:18, 7:20, 11:17, 14:10, 14:15, 14:20, 16:4, 17:8, 17:11, 17:15, 18:3
Malina [1] - 7:12
manhole [1] - 11:4
matter [6] - 1:11, 3:7, 6:8, 8:12, 8:15, 9:1
matters [3] - 7:12, 7:15, 19:4
Matters [1] - 2:5
mean [2] - 2:17, 4:19
means [3] - 1:15, 3:21, 4:20
meets [1] - 16:6
merely [1] - 4:16
methods [1] - 6:22
microphone [1] - 3:16
might [1] - 4:21
miles [1] - 5:15
momentarily [1] - 3:6
money [2] - 12:19, 12:21
month [1] - 17:14
months [4] - 9:2, 12:12, 16:15, 16:18
motion [1] - 14:12
move [2] - 12:21, 13:7
MR [50] - 1:18, 1:20, 1:21, 7:11, 7:20, 8:6, 8:11, 9:5, 9:8, 9:21, 10:12, 10:19, 10:22,

11:17, 11:20, 12:16, 13:7, 13:16, 13:21, 14:7, 14:10, 14:15, 14:20, 15:3, 15:5, 15:10, 15:14, 15:19, 15:21, 16:1, 16:4, 16:8, 16:12, 16:14, 16:18, 16:22, 17:5, 17:7, 17:8, 17:10, 17:11, 17:15, 17:19, 18:3, 18:5, 18:9, 18:14, 18:19, 18:20, 19:2
MS [15] - 1:19, 15:4, 15:7, 15:12, 15:17, 15:20, 15:22, 16:2, 16:6, 16:10, 16:13, 16:16, 16:20, 17:2, 17:6
municipal [1] - 1:3

### N

name [2] - 2:3, 8:5
names [1] - 10:9
need [10] - 3:14, 4:16, 11:10, 12:18, 13:1, 13:14, 15:17, 17:4, 17:5, 17:15
needs [1] - 15:13
never [3] - 12:18, 12:19, 14:11
new [3] - 9:13, 9:14, 15:2
next [1] - 6:15
notes [1] - 20:9
November [1] - 16:20
numbers [5] - 9:11, 9:12, 9:13, 9:14, 14:22

### O

oath [1] - 8:3
observed [2] - 2:9, 4:11
occurred [1] - 4:22
occurs [1] - 6:4
OF [5] - 1:1, 1:2, 1:9, 20:1, 20:2
offer [1] - 5:3
offered [1] - 5:4
old [1] - 10:8
one [12] - 2:9, 3:3, 4:10, 9:9, 11:2, 11:5, 13:22, 14:1, 15:2, 17:14
opened [1] - 11:8

opposed [2] - 3:1, 17:21
order [4] - 6:7, 6:14, 12:9, 18:16
ordered [4] - 10:2, 10:3, 15:2, 17:9
overnight [1] - 5:22
own [1] - 2:8

### P

PAGE [1] - 20:2
paid [1] - 6:21
painted [1] - 9:12
paper [1] - 6:10
parking [8] - 10:20, 11:2, 11:3, 11:12, 12:1, 15:1, 15:8, 17:18
PARRAN [15] - 1:19, 15:4, 15:7, 15:12, 15:17, 15:20, 15:22, 16:2, 16:6, 16:10, 16:13, 16:16, 16:20, 17:2, 17:6
partial [1] - 1:16
parties [1] - 4:4
parts [1] - 12:9
pay [1] - 12:19
people [2] - 12:18, 12:20
Perez [4] - 8:6, 8:7, 12:15, 13:11
PEREZ [7] - 1:21, 8:6, 12:16, 13:7, 13:16, 13:21, 18:19
perfect [1] - 8:2
permit [7] - 11:14, 11:15, 11:18, 14:6, 14:17, 15:18, 17:5
Petitioner [1] - 1:4
phone [1] - 6:11
photograph [1] - 6:11
pick [3] - 3:16, 12:18, 12:20
piecemealing [1] - 17:21
place [1] - 17:16
plants [1] - 11:8
plastic [1] - 10:8
plea [2] - 8:15, 8:22
podium [1] - 3:8
pole [8] - 9:15, 9:17, 9:18, 9:22, 10:2, 10:3, 16:12
position [1] - 14:16
possibly [1] - 9:3
post [1] - 14:21

practically [1] - 15:16
preliminary [2] - 8:16, 8:22
premises [1] - 2:8
preponderance [2] - 4:12, 4:17
PRESENT [1] - 1:17
preserve [1] - 3:9
preside [1] - 7:2
pretty [1] - 16:21
previous [1] - 2:7
printed [1] - 6:7
problem [1] - 17:3
proceed [4] - 2:4, 2:12, 3:3, 3:19
proceeding [1] - 3:20
PROCEEDINGS [1] - 1:9
produced [1] - 1:16
properly [1] - 17:1
properties [1] - 5:22
property [3] - 5:7, 5:10, 9:10
proposed [2] - 3:5, 3:21
prosecutor [2] - 3:22, 5:4
Prosecutor [1] - 1:18
prove [1] - 4:16
provided [1] - 1:13
pulling [1] - 15:15

**Q**

questions [4] - 3:14, 7:4, 7:6, 18:18

**R**

raining [1] - 11:9
raised [1] - 16:3
reach [1] - 4:4
ready [1] - 11:20
really [1] - 15:19
reasonable [1] - 4:14
receipt [1] - 15:3
receipts [1] - 10:4
receive [2] - 6:7, 6:14
record [1] - 3:10
recorded [1] - 3:9
recording [1] - 1:13
reduced [1] - 1:14
reduction [2] - 9:3, 18:7
regarding [2] - 8:14,

9:9
regardless [1] - 6:4
remaining [1] - 14:5
remind [1] - 8:3
remove [3] - 9:18, 9:21, 13:3
removed [6] - 12:6, 13:6, 13:12, 13:15, 16:11, 16:12
removing [1] - 14:8
replace [3] - 10:2, 10:15, 10:16
REPORT [1] - 1:9
reported [2] - 1:12, 20:6
reporter [1] - 20:4
Reporter [1] - 1:14
representing [2] - 2:9, 7:12
Respondent [4] - 1:8, 1:20, 1:21, 7:21
respondent [2] - 2:16, 2:21
responding [1] - 2:11
response [2] - 3:15, 7:8
result [1] - 2:5
review [1] - 3:12
Road [1] - 5:14

**S**

satisfied [3] - 9:14, 10:5, 10:17
SCHAUMBURG [3] - 1:1, 1:1, 1:2
Schaumburg [2] - 1:18, 2:3
see [1] - 10:13
sent [1] - 11:13
seven [1] - 12:4
shake [1] - 3:15
SHEIKH [31] - 1:20, 8:11, 9:5, 9:8, 9:21, 10:12, 10:19, 10:22, 11:20, 14:7, 15:3, 15:5, 15:10, 15:14, 15:19, 15:21, 16:1, 16:8, 16:12, 16:14, 16:18, 16:22, 17:5, 17:7, 17:10, 17:19, 18:5, 18:9, 18:14, 18:20, 19:2
shorthand [2] - 20:6, 20:9
Shorthand [1] - 1:14
showed [2] - 10:4, 10:8

sides [1] - 3:10
sign [4] - 10:8, 14:20, 14:21
signage [1] - 10:7
signature [2] - 6:8, 20:12
signed [1] - 11:6
situation [1] - 12:1
six [2] - 11:10, 13:17
soon [1] - 17:18
sort [2] - 3:4, 6:17
sounds [1] - 14:4
specifics [1] - 4:3
speeding [1] - 5:13
spoken [1] - 3:21
spots [1] - 10:21
stand [1] - 9:7
State [1] - 20:5
state [1] - 8:5
STATE [2] - 1:1, 20:1
status [2] - 5:22, 13:10
stenographic [1] - 1:15
step [1] - 3:7, 3:17
still [3] - 8:3, 10:13, 17:3
straight [1] - 11:5
straightforward [1] - 17:12
sunny [1] - 11:11
swear [1] - 3:18
sworn [1] - 8:8
synonymous [1] - 2:17

**T**

technical [1] - 9:9
Tenant [1] - 1:21
tenant [4] - 7:19, 8:1, 12:1, 12:5
tenants [1] - 10:7
terms [1] - 2:16
test [3] - 13:1, 13:18, 14:1
testify [1] - 8:5
testimony [2] - 1:9, 20:6
THE [28] - 2:1, 7:13, 7:18, 8:1, 8:7, 8:9, 8:12, 9:6, 9:20, 10:11, 10:18, 10:21, 11:16, 11:19, 12:15, 13:5, 13:9, 13:19, 14:4, 14:8, 14:13, 14:19, 17:13, 17:20, 18:6, 18:10, 18:15, 18:21
thinks [1] - 12:7

third [1] - 10:6
three [3] - 14:2, 16:14, 16:18
ticket [1] - 5:13
Title [1] - 7:21
TITLE [1] - 1:6
today [4] - 2:5, 4:1, 5:12, 8:10
today's [2] - 3:11, 8:20
towns [1] - 7:2
transcribed [2] - 7:16, 19:6
transcript [3] - 1:16, 3:12, 20:9
traveling [1] - 5:15
treat [1] - 18:22
tree [1] - 9:16
trial [4] - 3:4, 4:6, 4:7, 4:18
true [2] - 4:21, 20:8
Trust [1] - 7:22
TRUST [1] - 1:7
trying [1] - 14:10
two [5] - 3:3, 13:7, 13:12, 14:3, 17:14

**U**

under [1] - 8:3
unhappy [1] - 12:2
up [9] - 3:8, 3:16, 3:17, 8:13, 12:18, 12:20, 15:21, 17:1

**V**

vehicles [1] - 17:12
village [8] - 2:2, 2:6, 4:11, 4:22, 6:1, 7:2, 7:12, 13:9
VILLAGE [1] - 1:2
Village [3] - 1:18, 1:19, 7:18
village's [1] - 3:22
violation [3] - 5:19, 5:21, 16:21
violations [1] - 2:10
visible [1] - 9:11
voice [1] - 3:8

**W**

ways [1] - 3:4
weeks [3] - 11:8, 13:7, 13:12
welcome [1] - 18:15
WHEREUPON [2] -

7:15, 19:4
whole [1] - 16:10
wire [1] - 15:15
wires [1] - 16:4
Witness [1] - 8:8
words [1] - 2:13
writing [1] - 1:15

**Y**

yesterday [1] - 13:3

**Z**

ZAFAR [1] - 1:20