UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Zafar Sheikh, | ) | |
| | ) | Case No. 23-cv-3315 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| Brian Jung, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zafar Sheikh brings this action under various federal and state laws against Defendants Brian Jung, Robert Kryder, Lance C. Malina, and the Village of Schaumburg ("Village") (collectively, "Defendants"), for incidents related to Sheikh's attempts to secure building permits for a commercial property that he owns in the Village. Defendants have moved to dismiss Sheikh's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in this Order, Defendants' motion [14] is granted in part and denied in part. Defendants Jung, Kryder, and Malina are dismissed from the case. Sheikh may file an amended complaint within 30 days if he believes he can cure the deficiencies identified in this Order.

**BACKGROUND[1]**

Sheikh's claims in this lawsuit stem from building permits that he applied for from the Village, which he asserts were delayed and/or denied by various Village employees for discriminatory reasons. Sheikh purchased commercial property in the Village in 2014. (Dkt. 1 ¶ 7.) Sheikh made plans to renovate one of the vacant spaces on the property by installing an exhaust hood, so that Sheikh could market the space to individuals seeking to open a coffee shop or restaurant. (*Id.* ¶ 8.) To do so, Sheikh

---

[1] The Court takes the factual background from the well-pled allegations in the Complaint (Dkt. 1) and assumes the allegations to be true for purposes of the instant motion. *See, e.g., Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

informed the Village of his intentions with the property and applied for the proper building permits to perform the necessary work. (*Id.* ¶ 9.) Sheikh also hired an architect to draw up the plans for the vacant property and submitted those to the Village as well. (*Id.* ¶ 10.) The Village, however, wanted Sheikh to make some changes to the proposed design, which Sheikh did. (*Id.* ¶ 11.) After months of waiting to hear back from the Village, Sheikh contacted Brian Jung, an employee of the Village who Sheikh alleges was an examiner in the Village's building and permitting department. (*Id.* ¶ 12.) Jung informed Sheikh that his submissions were sufficient, and that Sheikh should expect to receive approval of the plans "shortly." (*Id.*) Sheikh alleges, however, that after this conversation he still waited weeks and did not hear back from the Village on the status of his requested permits. (*Id.* ¶ 13.)

After weeks without an answer, Sheikh alleges he again reached out to Jung. (*Id.* ¶ 13.) During this conversation, Jung noted other potential issues with the building that were visible from the pictures Sheikh had submitted. (*Id.* ¶ 15.) Jung, however, reaffirmed that he expected the permit to be issued within days. (*Id.* ¶ 16.) Sheikh alleges that this pattern continued for months—Sheikh would contact Jung about the status of his permit requests, Jung would express that he expected the permits to issue shortly, but then also request additional changes to Sheikh's design plans. (*Id.* ¶¶ 17–20.)

After attempting to reach Jung regarding the status of his building permits, Sheikh was contacted by Robert Kryder who informed Sheikh that he was hired by the Village and that he would be in charge of Sheikh's permit requests moving forward. (*Id.* ¶ 20.) Kryder told Sheikh that he would re-inspect all of the materials Sheikh had already sent to the Village to determine if Sheikh's requested permits should be issued. (*Id.*) Sheikh alleges that Kryder began asking Sheikh about issues with the building that had long been resolved. (*Id.*) Ultimately, Sheikh alleges that Kryder concluded that he would "never" issue a permit to Sheikh or to any occupant in Sheikh's building. (*Id.*) Sheikh also alleges that Kryder told him he wanted to visit the premises to ensure that there was no "germs or fungus" in the building. (*Id.* ¶ 21.) Sheikh alleges that Kryder's comments about "germs or fungus" were

derogatory toward Sheikh, who is an immigrant of Middle East origin. (*Id.* ¶¶ 1, 21.) This is because Sheikh alleges Kryder also made comments insinuating that immigrants were responsible for bringing COVID-19 to the United States. (*Id.* ¶ 21.)

Sheikh also submitted plans to improve the façade of the commercial property. (*Id.* ¶ 22.) Sheikh alleges that the Village similarly refused to approve these plans. (*Id.* ¶ 22.) Instead, the Village continued to impose new conditions on Sheikh's plans, requiring Sheikh to continuously change the plans to meet the Village's requirements. (*Id.*) While the Village informed Sheikh the material he intended to use for the façade was not permitted, Sheikh alleges hundreds of other commercial and residential buildings in the Village use the same material. (*Id.*) After over one year, the Village still has not approved Sheikh's requested plans for the façade. (*Id.* ¶¶ 22–23.)

Sheikh alleges that he ultimately attempted to appeal the Village's denial of his permit requests administratively. (*Id.* ¶ 29.) Sheikh filled out a complaint form available on the Village's website, which the Village website lists as a way to report any discrimination or other complaint any Village resident has with the Village. (*Id.* ¶ 31.) The Village website states that it will investigate the complaints that are filed. (*Id.*) Sheikh received a response to his complaint from the Village manager, Mr. Townsend. (*Id.* ¶ 32.) According to Sheikh, Mr. Townsend informed him that the Village would not investigate his complaint because Sheikh had threatened to take legal action against the Village if the Village did not approve his permits. (*Id.* ¶ 32.)

The complaint suggests that Lance Malina, who Sheikh alleges is an advisor to the Village, was ultimately behind the decisions to delay and deny Sheikh's permit requests and to not investigate Sheikh's complaint filed on the Village's website. (*Id.* 33.)

Sheikh also makes allegations regarding inappropriate behavior by the Village directed at two of the tenants in Sheikh's property, which ultimately led to one of the tenants leaving the property. For instance, Sheikh complains that the Village refused to grant a license for one of his tenants to

operate a business on the property for truck and van rentals. (*Id.* ¶¶ 25.) Sheikh alleges the Village denied the request because it did not feel that this type of business was "suitable" for the Village. (*Id.* ¶ 27.) The Complaint does not make clear, however, whether Sheikh himself applied for the business license or whether he applied for the license on behalf of his tenant. Because these factual allegations do not appear to be related to Sheikh's claims and involve the rights and claims of other individuals not parties to this case, the Court will disregard them.

Sheikh brings claims under 42 U.S.C. §§ 1981, 1982, and 1983 for violation by Defendants of the Equal Protection Clause, the right to due process under the Fourteenth Amendment and First Amendment retaliation. (*Id.* Counts 1–5.) Sheikh also brings state law claims for mandamus and for relief from the citations he has received from the Village. (*Id.* at 17–23.) Sheikh alleges that the Village is vicariously liable for the actions of its employees. (*Id.* Count 3.) Before the Court is Defendants' motion to dismiss Sheikh's complaint in its entirety. (Dkt. 14.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not, however, accept conclusory allegations, or allegations that contain only legal conclusions. *See, e.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Because Sheikh prepared and filed his complaint pro se, the Court must construe the complaint liberally and "more forgivingly than a pleading prepared by a lawyer." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

## DISCUSSION

Defendants move to dismiss the complaint in its entirety on the grounds that Sheikh has failed to state a claim for each cause of action he asserts. The Court will take up each of Sheikh's claims below, starting with Sheikh's Equal Protection claims (Counts 1 and 3) Sheikh's due process claim (Count 2), Sheikh's civil rights claims (Count 4), First Amendment retaliation claim (Count 5), and finally, Sheikh's state law claims for mandamus and petition for relief from the Village's citations (Counts 7 and 8).

### I.     Sheikh's Equal Protection Clause claim (Count 1)

Sheikh alleges that the Village violated his right to equal protection by selectively enforcing the Village's building codes against Sheikh because he is of Middle Eastern heritage. (Dkt. 1 ¶ 38.) Sheikh also argues that the Village of Schaumburg is vicariously liable for the acts of its employees, Malina, Kryder, and Jung. (*Id.* ¶¶ 46–49.)

Defendants argue Sheikh has failed to state a claim for equal protection violations against both the Village and the individual defendants. (Dkt. 14 at 9.) Specifically, Defendants argue Sheikh has failed to plead either a discriminatory intent or a discriminatory purpose with respect to his equal protection claims. (*Id.* at 11.) Defendants also argue that Sheikh's Equal Protection claim must be dismissed because Sheikh has failed to allege that the Village can be liable under § 1983 pursuant to *Monell*. (Dkt. 14 at 9–10.) Because liability under *Monell* may not attach without an underlying claim, the Court will first analyze whether Sheikh has stated an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment prohibits state action that "discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). The complaint alleges that the Village discriminated against Sheikh on the basis of his ethnicity and religion. (Dkt. 1 ¶¶ 38–39.) Sheikh also raises a "class of one" argument in his opposition brief to Defendant's motion to dismiss. (Dkt. 19 ¶¶ 11–12.) Construing the allegations in Sheikh's pro se complaint liberally, the Court understands that Sheikh intends to proceed on a theory of ethnic and religious discrimination under the Equal Protection Clause. (*See generally*, Dkt. 1 ¶¶ 21, 29, 31, 38–39 (detailing allegations of ethnic and religious discrimination)).

The Court, therefore, will determine whether Sheikh has stated a claim under the Equal Protection Clause for discrimination on the basis of Sheikh's ethnicity and religion. At the motion to dismiss stage, a complaint must sufficiently allege that the plaintiff was treated differently by the government based on the plaintiff's membership in a protected class and allege that the defendant acted with discriminatory intent. *Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d 516, 532 (N.D. Ill. 2020) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)).

The Court finds that, at the pleading stage, Sheikh has stated an equal protection claim. Sheikh alleges that the Village selectively enforces its laws intentionally against individuals of Middle Eastern descent in violation of the Equal Protection Clause. (Dkt. 1 ¶¶ 38–39.) Specifically, Sheikh claims that he was denied building permit applications and that the Village imposed additional requirements on him that were not imposed on other similarly situated property owners. (*See generally*, Dkt. 1 ¶¶ 20–23.) Further, Sheikh alleges Defendant Kryder imposed additional requirements on Sheikh to receive building permits because of Sheikh's status as a "foreigner." (Dkt. 1 ¶ 21.) Sheikh also alleges Defendant Malina ordered the delay and denial of the building permits Sheikh applied for on "frivolous" grounds, which the Court may reasonably infer relates to Sheikh's allegations of ethnic

6

and religious discrimination. (*Id.* ¶ 33.) The Court finds that Sheikh's allegations are sufficient to state a claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (affirming denial of motion to dismiss equal protection claim where plaintiff alleged that defendant village intentionally demanded certain conditions on plaintiff's property that it did not demand from other similarly situated property owners); *see also Doe v. Bd. of Educ. of City of Chicago*, 611 F. Supp. 3d at 533. Moreover, Sheikh alleges throughout the complaint that he complied with the requirements for the building permits he applied for and the requests made by Defendants. (Dkt. 1 ¶¶ 12, 18–20, 23, 27.) Accepting all the facts as true at the pleading stage, and liberally construing the allegations in the complaint in Sheikh's favor, the Court finds that Sheikh has pled he was treated differently by Defendants because of his ethnicity and religion.

Because Sheikh has stated an equal protection claim, the Court will next determine whether Sheikh can bring his § 1983 claim against the Village under *Monell*. To state a § 1983 claim against a municipality or government entity, a plaintiff must meet the requirements set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, the Supreme Court has held that a municipality cannot be vicariously liable "for the constitutional torts of their employees or agents[.]" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Rather, a municipality may only be subject to § 1983 liability where the plaintiff alleges that a "municipal policy or custom caused the constitutional injury." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 376 (7th Cir. 2022). To state a § 1983 claim against a municipality, a plaintiff must allege one of the following: "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

To allege the type of "custom" sufficient for a *Monell* claim, a plaintiff may show "knowledge of policymaking officials and their acquiescence in the established practice." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993). An isolated incident is insufficient to allege a widespread custom or practice. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). This is because, "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work[.]" *Id.* Accordingly, a plaintiff seeking to impose § 1983 liability on a municipality on this theory must point to evidence of "a prior pattern of similar constitutional violations." *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022) (citing *Polk Cnty.*, 960 F.3d at 380).

Here, the Court concludes that Sheikh has adequately alleged that the Village had an unofficial policy or custom of denying Sheikh's building permit applications. (Dkt. 1 ¶¶ 11, 13, 16–21, 21, 27.) Sheikh alleges that multiple individuals employed by the Village have denied Sheikh's building permit applications. (*Id.*) Accordingly, at the pleading stage, it is "possible to infer that there is a policy at work." *McNabola*, 10 F.3d at 511; *see also Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004) (affirming jury award finding *Monell* liability where prison contractor had a custom of repeatedly failing to follow proper procedures regarding inmate suicide attempts). Accordingly, Sheikh may proceed on his equal protection claim against the Village.

**II.      Sheikh's Due Process claims (Count 2)**

The Court next turns to Sheikh's due process claim. Sheikh brings claims under the Fourteenth Amendment for due process violation against Defendants. (Dkt. 1 ¶ 44.) Sheikh alleges that Defendants' denial or refusal to grant Sheikh's building permit application deprived Sheikh of use of his property without due process. Sheikh alleges he spent "hundreds of thousands of dollars" purchasing the Property with the intent to lease out spaces in the property for commercial use, but that Defendants' actions have rendered the property useless, and Sheikh is unable to make any profit

8

from it. (*Id.* ¶ 42.) Sheikh also purports to bring his due process claim against Townsend, however, the Court notes that Townsend was not named as a defendant in this action.

Defendants argue that Sheikh cannot state a due process claim because he has no entitlement or right to the building permits at issue, therefore, denial of Sheikh's building permit application does not amount to a Constitutional violation. (Dkt. 14 at 15.) Defendants argue that because the municipal ordinances governing the building permits Sheikh was seeking do not set out substantive criteria which, if met, mandate issuance of a building permit fee, Sheikh is not entitled to those permits as a matter of right. (*Id.*) In his opposition to Defendants' motion to dismiss, Sheikh argues that he is not claiming he had any entitlement to the building permits; instead, Sheikh conflates his due process claim with his equal protection claim, arguing that if other similarly situated individuals not in the same protected class as Sheikh are able to receive the same permits, he should be treated the same as those individuals. (Dkt. 19 ¶ 18.)

The Fourteenth Amendment prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment provides procedural protections, such as notice and an opportunity to be heard, when the government seeks to deprive a citizen of life, liberty, or property. *Lavite v. Dunstan*, 932 F.3d 1020, 1032 (7th Cir. 2019). To state a claim for a due process violation, a plaintiff must first allege that he was "actually" deprived of a liberty or property interest entitled to constitutional protection. *Id.* In the context of the building permits at issue in this case, "where a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit, an applicant who has met those criteria might assert a legitimate claim of entitlement to the permit." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990).

Here, Sheikh has not alleged that the ordinances providing for the building permits he applied for provided "substantive criteria which, if met, dictate the issuance of a permit." *Id.* Accordingly,

9

Sheikh has not stated a due process violation under the Fourteenth Amendment on this theory. *See Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989) (holding plaintiff failed to state a claim for due process violation where the license plaintiff was seeking was a "privilege not a right[.]").

Based on the facts pled in the complaint, the Court also cannot determine that Sheikh has stated a takings claim. While he alleges in a conclusory fashion that he no longer has any "utility" in the Property, he has not alleged that he has been completely deprived of all economically beneficial use of his property. *See Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1025 (N.D. Ill. 2016) (dismissing plaintiffs' regulatory takings claim because plaintiffs did not allege that the relevant regulation deprived them of all economically beneficial use of their property). Accordingly, Sheikh's Fourteenth Amendment due process and takings claims are dismissed.

### III. Sheikh's claims under the Civil Rights Act and for vicarious liability (Counts 3 and 4)

Sheikh also brings claims against Defendants under §§ 1981 and 1982 of the Civil Rights Act. Sheikh claims that in denying his building permit applications, Defendant Kryder made disparaging comments to Sheikh in relation to Sheikh's status as an immigrant. (Dkt. 1 ¶¶ 50–52.) Defendants argue all of Sheikh's claims under the Civil Rights Act must be dismissed because he has not alleged discrimination concerning any of the activities enumerated in §§ 1981 and 1982. (Dkt. 14 at 16–18.)

Section 1981 protects against racial discrimination in contract formation, while § 1982 protects against discrimination in property transactions. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). To state a claim under § 1981, Sheikh must establish that (1) he is a member of a racial minority; (2) defendants had an intent to discriminate on the basis of Sheikh's race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Id.* To bring a § 1982 claim, Sheikh must allege the same elements but in relation to the sale of property. *Hatch v. City of Milwaukee*, No. 21-2805, 2022 WL 897676, at *2 (7th Cir. Mar. 28, 2022).

Here, the Court finds that Sheikh has failed to allege that Defendants discriminated against

10

him in relation to the formation or enforcement of a contract or the sale of property. *See Morris*, 89 F.3d at 414 (dismissing plaintiffs' § 1981 complaint because complaint failed to allege that defendant denied plaintiffs any right enumerated by § 1981). Sheikh has not alleged that Defendants' failure to approve his building permits has hindered his ability to make or enforce contracts or to buy and sell property. Accordingly, this claim is dismissed.

Sheikh also alleges that the Village is vicariously responsible for its employees' violations of § 1981. As the Court explained above, however, a municipality cannot be vicariously liable "for the constitutional torts of their employees or agents[.]" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733–34 (1989). Further, because the Court has already determined that Sheikh failed to state a claim under § 1981 against Defendants, it will not analyze whether *Monell* liability may attach for this claim. Sheikh's Count 3 for vicarious liability is therefore dismissed.

## IV. Sheikh's First Amendment Retaliation Claim (Count 5)[2]

Sheikh also alleges he was retaliated against by the Village and Defendant Malina for exercising his First Amendment rights because they refused to investigate Sheikh's complaints regarding his permit denials because Sheikh brought a lawsuit against the Village. (*Id.* ¶¶ 55–57.)

Defendants make no argument that Sheikh has failed to plead the elements of a First Amendment retaliation claim but instead argue that Sheikh pled himself out of this claim by attaching as an exhibit to the complaint an email conversation between him and the Village Manager Brian Townsend. (Dkt. 1 at 64.) In this email conversation, Townsend informs Sheikh that because Sheikh already filed a lawsuit against the Village in the Circuit Court of Cook County and because Sheikh indicated his intent to file a federal lawsuit as well, Townsend did not believe it was appropriate for

---

[2] The Court notes that Sheikh lists Sections 1981 and 1982 of the Civil Rights Act under Count 5 as well. However, Sheikh does not make any allegations in this Count that these sections were violated.

the Village to take any further action to investigate Sheikh's complaints. (*Id.* at 64–65.) Defendants

argue that this email conversation shows the Village did not have any retaliatory intent in refusing to

investigate Sheikh's complaints, and that the Court must accept the exhibit as true at the motion to

dismiss stage. (Dkt. 21 at 11.)

To bring a retaliation claim under § 1983, a plaintiff must allege that "(1) he engaged in activity

protected by the First Amendment; (2) he suffered a deprivation that would likely deter First

Amendment activity in the future; and (3) the First Amendment activity was at least a motivating

factor in the Defendants' decision to take the retaliatory action." *Novoselsky v. Brown*, 822 F.3d 342, 354

(7th Cir. 2016.)

Turning first to whether Sheikh's speech was protected by the First Amendment, the right to

petition the government "extends to the courts in general and applies to litigation in particular." *Id.* at

355. Sheikh's lawsuit in Cook County, therefore, falls within a protected activity. The second element,

which looks to the extent of the deprivation, is an objective test in which the Court looks to "whether

the alleged conduct by the defendants would likely deter a person of ordinary firmness from

continuing to engage in protected activity." *FKFJ*, 11 F.4th at 585. The severity of the retaliatory

conduct is a question of fact, and the law "merely requires some negative consequence (deprivation)

with a chilling effect on First Amendment activity." *Id.* At the same time, "when the asserted injury is

truly minimal, we can resolve the issue as a matter of law." *Douglas v. Reeves*, 964 F.3d 643, 647 (7th

Cir. 2020) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

The Court finds that, accepting all of Sheikh's allegations as true, he has not alleged a sufficient

deprivation that would "deter a person of ordinary firmness" from engaging in protected activity under

the First Amendment. The deprivation Sheikh alleges is that the Village declined to investigate his

complaint of discrimination. (Dkt. 1 ¶ 57.) This is not the type of action that typically rises to the level

of retaliation. *See DeJong v. Pembrook*, 662 F. Supp. 3d 896, 911 (S.D. Ill. 2023) ("Generally, retaliation

is actionable when a public official's statements rise to the level of threat, coercion, intimidation that punishment, sanction, or adverse regulatory action will immediately follow, or profound humiliation."). Sheikh, therefore, has failed to state a claim under § 1983 and the First Amendment for retaliation and this claim is dismissed.[3]

## V.     Sheikh's state law claims (Counts 6 and 7)

Finally, Sheikh brings a claim for mandamus and seeks relief from citations issued to him by the Village. Sheikh appears to request that this Court order the Village to grant Sheikh's building permit applications. (Dkt. 1 ¶ 65–66.) Sheikh also seeks relief from fines that he received from the Village which were ordered by an administrative judge. (*Id.* ¶¶ 67–81.)

### a.  Mandamus claim

Defendants argue that Sheikh cannot pursue a mandamus claim because a federal court cannot compel state officials to perform their duties under state law. (*Id.*) Defendants also argue that even if the Court were to exercise supplemental jurisdiction, Sheikh has failed to allege the necessary elements of a claim for mandamus. (*Id.* at 20–22.) Sheikh contends that the Court can exercise supplemental jurisdiction over his mandamus claim. (Dkt. 19 at 9–10.)

It is true that "[f]ederal courts lack the authority to direct state officials to comply with state law." *Indiana Land Co. LLC v. City of Greenwood, a Mun. Corp.*, No. IP 01-0533-C-B/G, 2003 WL 22208795 (S.D. Ind. Sept. 4, 2003); *see also Banks v. People of Illinois*, 258 F. App'x 902, 902 (7th Cir. 2007); *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988). As such, this Court cannot grant the relief Sheikh seeks and does not have jurisdiction over his mandamus claim.

Sheikh argues, however, that the Court may exercise supplemental jurisdiction over his mandamus claim pursuant to 28 U.S.C. § 1367. In any action where a federal court has original

---

[3] Because the Court has held that Sheikh has not stated a First Amendment retaliation claim, it makes no determination at this stage whether the email conversation attached to the complaint would be sufficient, on its own, to dismiss Sheikh's retaliation claim at the pleading stage.

jurisdiction, § 1367 allows the court to exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Supreme Court, however, has held that, under the Eleventh Amendment, a federal court may not exercise its supplemental jurisdiction as a basis for enjoining state officials from violating state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 120–21 (1984). Accordingly, the Court may not exercise supplemental jurisdiction over Sheikh's mandamus claim. This claim is therefore dismissed.

### b. Relief from citations

Sheikh claims that during the administrative hearing regarding citations he received from the Village, the Village inspector argued to the administrative judge that Sheikh had committed other violations. (*Id.* ¶ 82.) Even though Sheikh alleges he did not receive a separate citation for these alleged violations, the administrative judge still imposed fines against Sheikh for these violations. (*Id.* ¶ 83.) Sheikh argues the administrative judge did not follow the proper procedures in imposing these fines against him. (*Id.* ¶¶ 83–85.) Defendants argue that Sheikh has failed to state a claim that he is entitled to relief from the administrative judge's order relating to Sheikh's municipal citations. (Dkt. 14 at 21.)

At this time, however, the Court will not assess Defendants' arguments as to whether Sheikh has adequately pled that he is entitled to relief because this Court is not the proper forum for this claim. The Illinois Administrative Review Law clarifies that jurisdiction to review final administrative decisions is vested in the Circuit Courts of the state of Illinois. 735 ILCS 5/3-104; *see also Tucker v. City of Chicago*, 907 F.3d 487, 490 n.4 (7th Cir. 2018). Accordingly, this Court does not have jurisdiction over Sheikh's claims for relief from the administrative order.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. Sheikh may proceed on his equal protection claim against Defendant Village. Sheikh's claims for

14

violation of the Fourteenth Amendment (Count 2), vicarious liability (Count 3), violations of §§ 1981

and 1982 of the Civil Rights Act (Count 4), violations of § 1983 of the Civil Rights Act (Count 5),

mandamus (Count 6), and relief from citations (Count 7) are dismissed without prejudice. Accordingly,

Defendants Jung, Kryder, and Malina are dismissed form this case without prejudice. Sheikh may file

an amended complaint within 30 days if he believes he can correct the deficiencies outlined in this

Order.

**IT IS SO ORDERED.**

Date: 9/24/2024                                                  Entered:

                                                                _____

                                                                SHARON JOHNSON COLEMAN
                                                                United States District Judge

15